Kidder vs. The Knights Templars and Masons Life Indemnity Co.

KIDDER, Respondent, vs. THE KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY COMPANY, Appellant.

*November 25 — December 15, 1896.*

*Mutual benefit associations: Waiver of forfeiture: Authority of general manager: Court and jury.*

A forfeiture of a policy in a mutual benefit association, incurred by a violation of a provision avoiding the policy in case the assured, without the written consent of the company previously given, resided south of the thirty-second parallel in the United States between July 1 and November 1 in any year, is *held* to have been waived, as matter of law, by the acts of the general manager of the association in forwarding blanks for making proofs of loss after being informed by the beneficiary's attorney that the insured died at De Land, Florida, on September 16, and in requiring the amendment of proofs of loss showing that the place of residence of the insured was Eau Claire, Wisconsin, and Volusia county, Florida, and that he died in the latter place on September 16, by reason of which acts the beneficiary was put to expense in making and correcting such proofs, even though such general manager testified that when he sent the blanks and requested the amendment and correction of the proofs he did not know, or suspect, or believe that any provision of the policy in respect to residence or travel had been violated.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

This was an action on a policy of life insurance on the life of George A. Buffington in the sum of $5,000, brought by the plaintiff as beneficiary, to recover that sum, and the further sum of $700 for assessments paid on the policy. The defense was that the said Buffington was not a member of the defendant corporation at the time of his death; that for a long time prior thereto, and at the time of his death, he had violated and was violating the conditions of the policy, comprised in the fifth paragraph of the policy, to the effect that the assured was permitted to reside in

any settled portion of the Western Hemisphere lying north of the thirty-second parallel of north latitude, and in the United States lying south of the said thirty-second parallel, " excepting between the first day of July and the first day of November in any year," without the knowledge or consent of the company previously given in writing, in that, on or about the 1st of July, 1893, he left his home and residence in the city of Eau Claire, Wisconsin, and went to De Land, in Volusia county, Florida, south of said thirty-second parallel of latitude, with the intention and for the purpose of there remaining and residing, and that he did thereafter up to the time of his death, September 16, 1893, continuously remain and reside at said last-named place, without the knowledge or consent of any officer of the company. The policy also provided that, upon the violation of any of the conditions contained in the policy, it should be null and void, without action on the part of the company, or notice to the insured or beneficiary, and all payments made thereon, and all surplus of profits forfeited to the company, etc.

At the trial before the court and a jury, it appeared that notice of the death of the insured was given to the defendant company September 22, 1893. The attorney for the beneficiary, November 8, 1893, wrote to the company to ascertain the date of the original policy, and who was the beneficiary named in it. On the 9th of that month this letter was answered by W. H. Gray, general manager of the company, who testified to having received a letter, dated November 18, 1893, from said attorney, with inclosed proofs of loss, and that he answered said letter on the 21st of the same month. The letter of November 18 requested said general manager to advise said attorney " how much *Mrs. Kidder*, the beneficiary, is entitled to under this policy, in addition to $5,000. She would, of course, be much pleased to receive prompt payment, and be kind enough to advise me when the same may be expected."

The letter of the general manager to the attorney for the plaintiff, dated Chicago, November 21, 1893, was as follows:

"Dear Sir: Inclosed herewith please find proofs of loss in the case of G. A. Buffington, returned for correction. All the certificates give the date of the death as September 17th, with the exception of the physician's, which gives it as September 16th. We would ask that you give us the correct date of the death, and have the certificate made to correspond. Also, in answering the question 'In what capacity do you make the claim?' add to the answer, 'As daughter.' Please give this your early attention, return, and oblige, yours respectfully,

"W. H. GRAY, General Manager."

The witness further testified that the proofs of loss were returned in a letter stating: "As to the date of death and capacity in which the beneficiary claims insurance, I have corrected the proofs to correspond with your ideas. The physician's statement in regard to the date of death must, of course, be correct, as the undertaker at Eau Claire and the friends of the claimant were not present in Florida at the time of the death. Inclosed I return the papers to you, pursuant to your letter."

On the 27th of December, 1893, the general manager wrote to the attorney for the plaintiff as follows:

"Dear Sir: The loss of George A. Buffington has been carefully considered by our executive committee. I am sorry to say to you that we find, from the proofs of loss, that Sir Knight Buffington forfeited his policy in this company by violating the stipulation referring to residence below the thirty-second parallel of north latitude. With best wishes, etc.,      W. H. GRAY, General Manager."

The witness further testified that that was the end of the correspondence. On cross-examination he testified that, when he received the letter dated September 22, 1893, "I knew that Mr. Buffington had resided in Eau Claire. . . . He told me himself, when I saw him, that he resided in Eau

Claire. All our communications were to him at Eau Claire, and he paid all his different assessments through the National Bank of Eau Claire. . . . We had no knowledge of where he died, other than that received in the communication dated November 8th. That letter stated he died at De Land, Florida, on the 16th day of September last. When we received the letter of November 18th we had no information on the subject of his death, other than that contained in the three previous letters from the plaintiff's attorney, except that which was contained in the paper, called the proofs of loss, inclosed with his third letter, dated November 18th. We did not know, when we received that letter, that Mr. Buffington had violated any provision of his policy in respect to where he should reside or travel. When I wrote to the attorney my letter dated November 21, 1893, in which I called attention to the fact that one part of the proofs of loss states the death of Mr. Buffington at a different time than another, and suggesting that the words 'as daughter' be added to an answer, I did not know that any provision of the policy in respect to residence or travel had been violated. I did not suspect or believe, at that time, that any provision of the policy in that respect had been violated. . . . I believed that the policy had not been violated as to any of its terms." The witness identified the proofs of loss shown him, and, referring to the question, "Did the deceased violate any condition of the above-mentioned policy in respect to residence, travel, occupation, use of spirituous liquors, dueling, suicide, violation of the law, or had he been convicted of felony?" to which the answer was "No," he testified that that was what lead him to believe there had been no violation of the policy,— that he believed that the answer was true. The changes made in the proofs were by adding the words "as daughter" to the answer, "As beneficiary named in the policy," in respect to the capacity or title in which the claimant made her claim, and the date in three places

was changed from September 17 to September 16, to make the statement of the claimant, the friend, and the undertaker correspond, as to the date of death, with the date in the certificate of the attending physician.  Witness further testified that he was not an officer of the defendant company, but was a director, and was employed as general manager; that he had no authority to pass upon the validity of claims; no one has any such authority, except the board of directors and the finance committee, to whom has been delegated that power; that when he wrote to the claimant's attorney the letter dated December 27, 1893, declaring the policy forfeited, he had no information in regard to the violation of the policy in respect to travel and residence which he did not have when he wrote the letter suggesting that these corrections or changes be made in the proofs of loss; that he had no knowledge of any violation of the policy other than was contained in the correspondence; that the way he came to write that letter was, the proofs of loss were presented to the finance committee, and in looking over the proofs of loss carefully one of the members suggested that the policy might be violated, and that the claimant's answer, "No," was not in fact true, and that the committee instructed witness to write a letter declining to pay, upon the ground that the policy had been violated by virtue of the insured having resided south of the thirty-second parallel.  Being asked to point out in the proofs of loss what it was that was discovered which aroused his suspicions, his answer was that, "in Dr. Lyon's statement, in answer to the question, 'Place and date of death,' he says, 'At his residence, Volusia county, Florida, September 16, 1893.' Another question: 'How long had you been his usual medical adviser?' Answer: 'About two years.' Another question: 'What had been his several occupations?' And the answer was: 'Manufacturing and orange grower.' As to 'place of residence,' 'Eau Claire, Wisconsin, and Vo-

Kidder vs. The Knights Templars and Masons Life Indemnity Co.

lusia county, Florida.' And in answer to the question,
'Duration of last illness,' the answer was, 'Forty-two days.'
Another question was, 'Date of last visit,' and the answer,
'September 15, 1893, and remained in attendance until his
death.' These were the things that led to the suspicion that
the terms of the policy had been violated." Question to
witness: "Then the committee had no knowledge or infor-
mation upon the subject except that?" Answer: "That
is all." Proofs of loss were received in evidence in connec-
tion with this testimony. Plaintiff's attorney testified that
she was put to an expense in the making of the original
proofs of $25, which she paid, and the expense that she was
put to in making corrections in the original proofs, as re-
quested, and the returning of them, was $10, which she had
also paid. Testimony was given, on the part of the plaint-
iff, to the effect that the insured had lived in Eau Claire,
Wisconsin, thirty-eight years, and ever since May, 1857.
This testimony was objected to on the ground that it was
not competent for the plaintiff to contradict the statement
made in the proofs of loss, there being a statement contained
therein that the defendant had his residence in Volusia
county, Florida.

Plaintiff having rested, the defendant moved for a non-
suit, which was denied. The defendant produced no evi-
dence, and the jury, on motion of the plaintiff's counsel,
were instructed to render a verdict in her favor for $6,011.35,
upon which the plaintiff had judgment. The defendant
appealed.

For the appellant there was a brief by *Doolittle & Shoe-
maker*, and oral argument by *L. A. Doolittle*. To the point
that the forfeiture had not been waived they cited *Bennecke v.
Insurance Co.* 105 U. S. 356; *Armstrong v. Agricultural Ins.
Co.* 130 N. Y. 560; *Cannon v. Home Ins. Co.* 53 Wis. 585,
595; *Ronald v. Mut. R. F. L. Asso.* 23 Abb. N C. 271;
*Boyd v. Insurance Co.* 90 Tenn. 212; *Milligan v. Goddard*,

1 How. Pr. (N. S.), 377; *Lyon v. Supreme Assembly R. Soc.*
153 Mass. 83; *McCoy v. Metropolitan L. Ins. Co.* 133 id. 85;
*Brewer v. Chelsea Mut. F. Ins. Co.* 14 Gray, 203; *Mulrey v.
Shawmut Mut. F. Ins. Co.* 4 Allen, 116; *Fitchpatrick v.
Hawkeye Ins. Co.* 53 Iowa, 335; *Phœnix Ins. Co. v. Steven-
son,* 78 Ky. 150; *McCormick v. Orient Ins. Co.* 86 Cal. 260;
*Pettengill v. Hinks,* 9 Gray, 169.

*H. H. Hayden,* for the respondent.

PINNEY, J.   The view that we feel compelled to take of
this case, under previous decisions of this court, renders it
unnecessary to consider whether the construction of the pro-
visions of the policy, in respect to the residence of the in-
sured south of the thirty-second parallel of north latitude,
adopted by the circuit court in directing a verdict in favor
of the plaintiff, was correct or not.   Assuming that it was
erroneous, and that a forfeiture of the policy upon the
ground insisted on had occurred, still we think it was waived
by the company calling on the claimant, through its gen-
eral manager, to correct and amend her proofs of loss,
and by her compliance with such request at an expense to
her of $10, and the consequent delay in the collection of
her claim, and that the company is now estopped from in-
sisting that the policy was forfeited.   The general manager
of the company, Mr. Gray, was one of the directors of the
company, and it clearly appears that it was within the scope
of his duties as such general manager to conduct corre-
spondence with claimants under policies, to receive proofs,
and to call on them as occasion might occur for further or
amended proofs.   Notice to him in respect to a loss, and
the particulars thereof, was certainly notice to the company;
and in calling on a claimant for further or amended proofs
and making requests in relation thereto, he must be consid-
ered as having lawfully represented it.   The company was
informed, by the letter of the claimant's attorney of Novem-

ber 8 to the general manager that the insured died at
*De Land, Florida,* on the 16th of September, 1893, and sent,
through him, to such attorney, on the next day, suitable
blanks for making proofs of loss.   These proofs were made
out and forwarded at an expense to the claimant of $25,
and subsequently she incurred a further expense, as stated,
in correcting and amending them at the instance and re-
quest of such general manager.   The proofs as originally
submitted, and when returned for amendment and correc-
tion, showed upon their face the ground of forfeiture relied
on by the defendant with such degree of clearness and cer-
tainty as to have precluded any reasonable doubt of the
duty of the company to have at once stood on the defense
and denied the loss.   The general manager evidently had
in his hands and examined the proofs quite critically, to en-
able him to point out the defects mentioned in his letter to
the claimant's attorney.   The time had then arrived for the
company to determine either to insist upon the forfeiture,
or to continue to deal with the claimant on the basis that
the policy remained a continuing contract, binding upon the
claimant and on the company.   It is hardly possible that
the general manager could have discovered the defects in
the proofs pointed out in his letter without also discovering
that the certificate of the attending physician, Dr. Lyon,
showed that the insured died at his residence, Volusia
county, Florida, September 16, 1893; that he had been his
attending physician about two years; that the occupations
of the insured were manufacturing and orange grower; and
as to place of residence, "Eau Claire, Wisconsin, and Volu-
sia county, Florida;" that the duration of his last illness
was forty-two days, and the date of the last visit of the
physician was September 15, 1893; and that he remained
in attendance until his death.   With this information before
him, the general manager returned the proofs, inclosed in
the letter already mentioned, for correction and amend-

Kidder vs. The Knights Templars and Masons Life Indemnity Co.

ment, and also inclosed a full set of blanks for making, if need be, entirely new proofs. It was upon the identical statements embraced in the proofs as first furnished that the finance committee repudiated any liability for the loss. It is shown that they had no other information on this subject than these statements. After a month's delay they instructed the general manager to write a letter declining to pay, upon the ground that the policy had been violated by virtue of the residence of the insured south of the thirty-second parallel. In May, Ins. § 505, cited with approval in 2 Bacon, Ben. Soc. § 421, it is stated that "the terms 'estoppel' and 'waiver,' though not technically identical, are so nearly allied, and, as applied in the law of insurance, so like in the consequences which follow their successful application, that they are used indiscriminately by the courts." In *Diehl v. Adams Co. Mut. Ins. Co.* 58 Pa. St. 443, it is said that a waiver of breach of conditions "never occurs unless intended, or where the act relied on ought, in equity, to estop the party from denying it." And in Bigelow, Estoppel (4th ed.), 27, it is said that "another kind of estoppel by conduct may arise, to wit, by a party to a contract or transaction inducing the other to act in the belief that the former will waive certain rights he might otherwise maintain against the latter."

The rule of waiver by estoppel, as applied to the facts in this case, has been so often declared in this state that extended discussion would be out of place. The doctrine is stated by COLE, C. J., in *Cannon v. Home Ins. Co.* 53 Wis. 593, to be "that a party cannot occupy inconsistent grounds or positions; that one who relies upon the forfeiture of a contract cannot, at the same time, treat the contract as an existing, valid one, nor call upon the other party to the contract to do anything required by it; or, to apply the proposition to the precise facts in the case, that, as the defendant, in its correspondence with the attorneys of the plaintiff,

after full knowledge of the forfeiture, saw fit to call for additional proofs of loss, recognizing by this act the continued validity of the policy, it could not, after the plaintiff had gone to the expense and trouble of furnishing these proofs, change its ground and claim that the policy was no longer in force." Several former cases in this court were cited in support of this proposition, and it was said that "they certainly settle the rule of law for this state." *Webster v. Phœnix Ins. Co.* 36 Wis. 67; *Northwestern Mut. L. Ins. Co. v. Germania F. Ins. Co.* 40 Wis. 446; *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108. See, also, *Oshkosh G. L. Co. v Germania F. Ins Co.* 71 Wis. 454; *Jerdee v. Cottage Grove F. Ins. Co.* 75 Wis. 345 It seems to be well established that such waiver may arise from the act of the general agent of the company in relation to any matter within the scope of his authority, and the acts of the general manager of the defendant in reference to proofs of loss, and in requests for amendments or corrections thereof, are, we think, within the rule. 2 Bacon, Ben. Soc. § 626. The amount of expense incurred by the claimant, if substantial, is not material. In *Jerdee v. Cottage Grove F. Ins. Co., supra,* which was the case of a mutual company, the amount was but $5; and in *Northwestern Mut. L. Ins. Co. v. Germania F. Ins. Co.* 40 Wis. 446, the expense was quite small, but there was a loss of interest on the claim caused by delay. The rule as to waiver of forfeitures by estoppel is regarded as applicable to policies in mutual fire and mutual benefit companies. *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224; *Whiting v. Miss. Valley M. M. Ins. Co.* 76 Wis. 599; *Jackson v. N. W. Mut. R. Asso.* 78 Wis. 463–472; *True v. Bankers' L. Asso.* 78 Wis. 287; *McKinney v. German M. F. Ins. Soc.* 89 Wis. 653–658; *Seibel v. N. W. Mut. R. Asso., ante,* p. 253. But the doctrine of estoppel cannot be successfully invoked to create a liability not contracted for, or one which would be outside or in violation of the powers of the company.

*McCoy v. N. W. Mut. R. Asso.* 92 Wis. 578–584. Like stock companies, these companies act and deal with their patrons by and through their officers and agents, and we are not aware of any sound reason for holding that they will not, like stock companies, be affected and bound, as by estoppel, by reason of the acts and conduct of such officers and agents within the scope of their duties. It seems to be settled that, "in the absence of express provisions in the charter of mutual life insurance companies limiting the scope of the duties and powers of such officers or agents, it must be presumed that each person, in becoming a member of the company, impliedly consents that it shall be represented by such officers and agents as are reasonably necessary for the transaction of its business, and that they shall possess the powers and perform the duties ordinarily possessed and performed by such officers and agents." Niblack, Ben. Soc. & Acc. Ins. § 95, and cases cited; *Protection L. Ins. Co. v. Foote,* 79 Ill. 362.

The facts were undisputed, and the question of waiver was one of law for the court. We are not unmindful that Gray, the general manager, testified that, when he wrote the letter of November 21, to the claimant's attorney, requesting the amendment and correction of the proofs, and sending him blanks, that he did not know or suspect or believe that any provision of the policy in respect to residence or travel had been violated, although the fact is he had been informed, in the letter to him of November 8, notifying the company of the death of the insured, that he died in Volusia county, Florida, and although it is evident, from his letter of November 21, that he had handled and carefully examined the proofs, and he does not deny but that he had read and examined them, as it was clearly his duty to the claimant and to the company to have done with reasonable care and dispatch. They show that the insured died within the alleged inhibited territory, and that he had been

a sojourner and dwelling therein for a period of six weeks, and contained evidence upon which it was quite clear that the facts relied on as a ground of forfeiture were well founded. The certificate containing them was a sworn certificate. The company must be held affected by notice of these facts, and neither Mr. Gray nor any of its officers with these facts before them can now be heard to say that they did not personally know or believe that there had been a forfeiture. The claimant, in her subsequent action, had a right to suppose that he had acted with diligence, and had read the proofs and formed the only conclusion the facts stated would warrant. There was, therefore, no question for the jury, and the court properly directed a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.