# PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. McDOWELL.

No. 2884.     Opinion Filed January 19, 1914.

Rehearing Denied June 16, 1914.

(141 Pac. 273.)

1.  **INSURANCE—Forfeiture Provision—Waiver.** Where a policy insures against accident for a period of one month only, but provides that it may be renewed and kept in force from month to month by the payment of monthly premiums on a certain day of each month, and that it shall be void and of no force and effect if such payments are not made on or before the day mentioned in the policy, such forfeiting provisions, being inserted solely for the benefit of the insurance company, may be waived by the company if it so desires, and such waiver on the part of the insurance company may be inferred from acts, as well as words.

2.  **SAME.** Although a policy may provide for the payment of monthly premiums on or before twelve o'clock noon of the 1st day of each month, and that all premiums are due without grace at the time specified, and that the policy shall be void unless such premiums are so paid, and contains the further provision that no alterations or waiver of the contract shall be valid unless made in writing at the company's home office and signed by the president or vice president and secretary or assistant secretary, yet if such company, in dealing with a certain class of policy holders in a certain district, establishes a custom with such policy holders of accepting the premium payments at a later date because of the fact that such policy holders received their monthly pay at a later date, and receives such premiums and appropriates them and recognizes the policies as continuing in force by accepting the premiums, such acts on the part of the company constitute a waiver of the provision that the policy shall be void unless the premiums are paid on the first day of the month.

3.  **SAME.** Where such monthly premiums are collected and retained by the company month after month, and the policies continued in force, such acts constitute a waiver on the part of the company itself, and not a waiver on the part of its local agents and collectors.

4.  **SAME.** Plaintiff took out a monthly accident policy which provided for payment of the premiums at noon of the 1st day of each month. He was a laborer in the oil fields and received his pay usually about the 15th of the month and paid the premiums on his policy from the 15th to the 25th of each month for a period of four or five months, during which time the company had received and appropriated same, without any remonstrance or objection. This custom was followed with all plaintiff's co-laborers in the oil field because they received their pay late in

the month. This is held to constitute a waiver of the provisions that the premiums should be paid before noon of the 1st day of each month, and the company cannot escape liability for an accident occurring previous to the day on which it had been its custom to receive the premiums.

(Syllabus by Harrison, C.)

*Error from Superior Court, Oklahoma County;*
*E. D. Oldfield, Judge.*

Action upon an accident insurance policy by Allen McDowell against the Pacific Mutual Life Insurance Company of California. Judgment for plaintiff, and defendant brings error. Affirmed.

*D. B. Welty* and *H. A. Wilkinson,* for plaintiff in error.

*V. E. McInnis, D. E. Turner,* and *A. F. Moss,* for defendant in error.

Opinion by HARRISON, C. This was an action by Allen McDowell against the Pacific Mutual Life Insurance Company of California upon an accident policy dated August 14, 1909. The cause was tried in February, 1911, resulting in a verdict and judgment in favor of McDowell for $600, and interest at 6 per cent. per annum from date of verdict. From such judgment, the insurance company appeals.

The decisive question is whether the acts of the company constituted a waiver of the provision that a failure to pay the monthly premium before noon on the 1st day of each month rendered the policy void. The policy, among other things, provides:

" * * * Hereby insures the person described in said application (called the insured) from noon of the day this policy is dated until noon of September first, 1909, standard time, unless continued by payment of premiums as provided in paragraph 'Monthly Premiums' hereinafter contained."

The paragraph "Monthly Premiums," referred to in the above paragraph, is as follows:

"8. Upon payment of the further sum of two and no-100 dollars at or before noon, standard time, of the day this policy expires, and upon the payment of a like sum at or before noon,

standard time, of the first day of each and every consecutive month thereafter, this policy shall be renewed one month for each such payment."

The policy contained also the following provision:

"F.   If the payment of any premium shall be made after the expiration of the term for which this policy fee or premium has been previously paid, and any accident happens within the time of such expiration and 12 o'clock noon, standard time, of the day following the date of such subsequent actual payment of premium, there shall be no claim on account of any result of any such accident, nor for illness or disease, or effects thereof, originating after such expiration and before the end of the fifteenth day after such subsequent actual payment of premium.  All premiums are due without grace at the time specified herein, and payable at the company's home office at Los Angeles, California, or at its Eastern head office, aforesaid, or to an authorized collector of the company."

And the further provision:

"G.   No alterations or waiver of the conditions or provisions of this policy or said application shall be valid unless made in writing at the company's home office at Los Angeles, California, and signed by the president or vice-president, and also secretary or assistant secretary; nor shall notice to or knowledge of any person of anything not written in said application be held to effect a waiver or estoppel upon the company, or affect the terms of this contract."

The question, then, is whether the record discloses such acts on the part of the company as would constitute a waiver on its part of the foregoing provisions.  The undisputed facts are: That a policy was issued August 14, 1909, the first monthly premium being paid on that day, which payment kept the policy in force until noon of the 1st day of September.  The September payment was made about the 15th.  The October payment was made, as the record shows, the latter part of October, at which time both the October and November premiums were paid.  The December premium was paid just before the holidays, all of which were received without objection by the company.  The insured stated that he made the payment a day or two before he went home, and he went home on Christmas day.  The January premium was sent in to the Delaware State Bank, the

cashier of which was the authorized collector for the insurance company, on the 19th. The party by whom the premium was sent, however, failed to find the banker at that time, as the bank had closed for the evening, it then being about 7 o'clock; but he returned the following day, the 20th, and tendered payment of the premium. The banker was unable to find McDowell's name on the list that day, and declined to receive the premium for that reason. On the 28th the party again presented the premium to the cashier of the bank, and at that time, having found McDowell's name on the list, accepted the premium and forwarded it to the home office of the company. In the meantime, however, on the 22d of January, McDowell sustained the injuries for which this action was brought, the injuries being caused by an explosion of gas, and within a day or two after his injuries notice was sent to the company, and upon receiving notice of the injuries the company returned the premium, claiming that the policy had been forfeited by nonpayment of the premium as provided in the policy. The returned premium was not accepted by McDowell, and the company refused to pay for the injuries received; hence the action was brought for recovery of same.

It appears from the record that in September, at the time the September payment was made, McDowell informed the agent of the company that he and the rest of the men working in the oil fields did not get their pay until the 10th to the 15th of the month, and made some inquiry about when the payments could be made without affecting the policy, and the agent informed him, not only then but repeatedly thereafter, that the company had made special arrangements for that particular district or section of the country because of the fact that they got their pay late in the month, and that the premiums would be accepted any time during the month. In connection with this phase of the case, the question was raised as to whether the local agent had authority to waive the provisions of the policy. But it is unnecessary to determine that question, as the waiver of the provisions of the policy is not regarded as having come through the agent nor made by the agent. The question is whether the company itself, by its acts, regardless of any representations the

local agent may have made, should be held to have waived the provisions for payment on the 1st day of each month by accepting the premiums, as they had accepted them for a period of four or five months previous, and still recognizing the policy as in force.

II. Lenehan, who for a period of some months acted as agent of the company, testified:

"A. I wrote insurance and collected it when I wanted to. Q. Who was the collecting agent, besides yourself? A. The Delaware State Bank. Q. Is the Delaware State Bank the bank of which Mr. Coulton is cashier? A. Yes, sir. Q. How were the premiums collected? A. Monthly. Q. What were your instructions as to the date on which each premium must be paid? A. From the 1st to the 10th of the month. Q. Suppose a man paid his premium as late as the 11th or 12th of the month, when it is due the 1st of the month; would you, as collector, accept it? A. Yes, sir. Q. Did the company or its general agents know this? A. Yes, sir; the general agents did. Q. What were your instructions from the general agents as to collections made after the 1st of the month? A. He said it was a special rule granted to this office to carry the insurance and collect for it late because the oil field paid after the 1st at different times. Q. How were these instructions given you, and by whom? A. By J. E. Shipp, general agent, and H. M. Snyder. Q. Who were these gentlemen? A. Mr. Shipp was general agent for Kansas and Oklahoma, and Snyder was agent. * * * Q. Were these instructions from Mr. Shipp in writing or verbal? A. He wrote me about that, and then told me verbally. * * * Q. Had you ever made known these instructions to the bank? A. Yes, sir; I have."

Mr. Coulton, cashier, testified:

"A. My instructions were to collect the money and send it in to Mr. Shipp, the general agent at Independence, after deducting my commission. * * * O. On what dates were these premiums usually paid? A. Anywhere from the 1st to the 25th. * * * Q. When was the money remitted to Mr. Shipp? A. I sent in a statement about the 25th for the ones that were paid, and the general agent would draw a sight draft for that amount on the bank. Q. Were any premiums which had been paid after the 1st of the month ever returned? A. No; there was never any premiums returned."

J. J. Fitzpatrick, who also for a time acted in the capacity of collector of premiums for the insurance company, testified:

"Q. How did you make your collections with reference to the day of the month the premiums fell due? A. At any time the policy holders wished to pay them. Q. Were the premiums so collected accepted by the company, or did they turn them down? A. They accepted them. Q. State whether or not any objection to that method of collection was urged by the company, and, if there was an objection, what was it? A. There was none that I know of. I know that I have accepted premiums that were six weeks delinquent, and they have accepted them, and in many instances the boys would allow them to be delinquent for such a time, and then would pay two or three months in advance."

In addition to the testimony quoted above, it also appears from the record that the plaintiff in November, on Thanksgiving evening, sustained an injury from an accidental shot, for which the company made settlement, paying him $18 for the time lost by reason of his injuries, thus recognizing the policy to have been in force during all the previous months when none of the premiums had been paid earlier than the 10th to the 15th and most of them paid as late as the 25th. Under this state of facts the company should be held to have waived the provisions of the policy by its own acts.

In the case of *Pacific Mutual Life Ins. Co. of Cal. v. O'Neil,* 36 Okla. 792, 130 Pac. 270, where the decisive question for determination by the court was whether certain acts of the company constituted a waiver of certain provisions of forfeiture in the policy, it was held:

"That an insurance company may waive any provision in a policy intended for its benefit is a principle that requires no citation of authorities in its support. Where there has been a breach in the conditions of a policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture by acts, as well as words. It is always required that the company, as well as the insured, should proceed in the utmost good faith. The consideration for the insurance is the premium paid, and if, when paid and appropriated by the company, it may, while retaining the premium, be allowed to plead that the contract of insurance is void *ab*

*initio,* then in such cases the insurer would be bound only at its pleasure."

In further discussing the forfeiting clauses of the policy and the effect of certain acts of the company in reference thereto, this court in the case, *supra,* said:

"Section 12 of the policy provides that a failure on the part of the insured or any one claiming under the policy to comply with any of the foregoing agreements should render the policy void. Even though this provision under the facts should be held to include statements contained on the back of the policy, the legal effect would be simply to render it voidable at the election of the insurer; but the insurer could waive the forfeiture and continue the policy in force, as in all contracts where stipulations avoiding the same are inserted for the sole benefit of one of the parties. The word 'void' in such cases is to be construed as though the contract read 'voidable.' *Veile v. Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec. 83; *Gans v. St. Paul F. & M. Ins. Co.,* 43 Wis. 108, 28 Am. Rep. 535; *Frost v. Saratoga Mut. Ins. Co.,* 5 Denio (N. Y.) 154, 49 Am. Dec. 234. It would therefore follow, as was said in *Masonic Mut. Benefit Ass'n v. Beck,* 77 Ind. 203, 40 Am. Rep. 295, 'that a distinct act of affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or of the right to annul the contract.'"

Also in *St. Paul Fire & Marine Ins. Co. v. Cooper,* 25 Okla. 38, 105 Pac. 198, it was held:

"* * * There being a breach of such condition, the company may waive the forfeiture by acts from which an intention so to do may be fairly inferred."

The facts in the case at bar present a much stronger case for the acts of the company to be held as a waiver of the forfeiting provisions of the policy than do the facts in either of the above Oklahoma cases. In fact, considered in the light of all the circumstances, the fact that each premium subsequent to the first was paid from ten to twenty days later than the date mentioned in the policy, the fact that such premiums had been received without objection by the company, and the fact that it had recognized the force of the policy and kept it alive under such payments to the extent of paying a claim for injuries

sustained during such period, admit of as little doubt of the legal effect of such acts as does such circumstance admit of a doubt but that if the last injury had not occurred, the premium would have been accepted and the policy continued in force without objection.   Nor can it be argued that the company should not be held liable because of the fact that the premium was not actually paid in until after the injuries were received, because the record shows that the insured had acted in the utmost good faith in the payment of his premium, and had acted wholly within the custom which the company had itself established among his fellow laborers because of the fact they did not get their money until late in the month, and had sent in his premium on an earlier date than had been his custom, four days before he was injured, and the further fact that the reason the premium was not actually paid in on the 19th was not because of any fault of the insured, but wholly because of the fault of the company in not having a properly revised list of their policy holders.   And but for this fault the premium would have been paid in four days before the injury occurred, in which case we do not think the company would have even presumed to deny liability. And the fact that the payment of such premium was not made until after the injuries, when the delay in such payment was due wholly to the company, should not change the legal effect of the circumstances.   We think upon the whole that the company was liable, and that the amount of the verdict and judgment is sustained by the evidence.

The other errors complained of are available only upon the theory that the company was not legally liable because of the forfeitures of the policy without waiver on the part of the company; and, aside from such errors as are available only upon such theory, we find none that would justify a reversal.

The judgment, therefore, is affirmed.

By the Court:   It is so ordered.