## NATIONAL LIFE INS. CO. OF THE UNITED STATES v. CLAYTON.

No. 6769—Opinion Filed July 10, 1917.

Rehearing Denied June 4, 1918.

(173 Pac. 456.)

1. **Insurance—Policy Provisions — Waiver —Cancellation.**

An insurance company may waive any provision in a policy intended for its benefit. Where there has been a breach of the conditions of the policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture by acts as well as words.

2. **Same — Forfeiture — "Waiver" — Reliance.**

Any declaration or course of action on the part of an insurance company which treats a policy, which the company could declare forfeited because of a breach of the conditions of the policy, as a valid and subsisting policy, which declaration or course of action is relied upon and acted upon by the insured, will constitute a "waiver" on the part of the insurance company of its right to forfeit such policy because of such breach of the conditions thereof.

3. **Same—Waiver—Evidence.**

Evidence examined, and held to be sufficient to sustain the finding of the trial court that the insurance company had waived its right to declare a forfeiture of the policy sued upon.

(Syllabus by Rummons, C.)

Error from County Court, Canadian County: W. A. Maurer, Judge.

Action by J. T. Clayton as administrator of the estate of Victoria C. Berry, deceased, against the National Life Insurance Company of the United States of America. Judgment for plaintiff, and defendant brings error. Affirmed.

Stephen C. Treadwell and Locke & Locke, for plaintiff in error.

W. M. Wallace, for defendant in error.

Opinion by RUMMONS, C. The parties will be referred to herein as they appeared in the court below. The plaintiff began his action in the county court of Canadian county against the defendant to recover upon a policy of life insurance issued by the defendant on April 8, 1908, to Victoria C. Berry, plaintiff's intestate, for the sum of $1,000. Said policy of insurance contained the following condition:

"All premiums are payable to the home office, but will be accepted if paid to an agent in exchange for a receipt, signed by the president, vice president, secretary, or actuary and countersigned by the agent designated thereon. This insurance is granted upon condition that all premiums be promptly paid when due, and failure to pay any premium or any part thereof, when due, or failure to pay at maturity any note given for any premium or any part of a premium, shall forfeit and cancel this contract and terminate all obligations of the company under this policy, and all premiums paid hereon shall thereupon stand forfeited to the company, except as herein otherwise provided."

It also contained the following provision:

"A grace of one month will be allowed in the payment of each premium after the first, during which month the insurance shall continue in full force and should the insured die during the month of grace the unpaid premium will be deducted from the amount payable under this policy."

It also contained the following provision:

"Agents are not authorized to alter or modify this policy of insurance, nor to extend the time for the payment of any premium."

The defendant answered, denying any liability upon the policy because of the failure of the plaintiff's intestate to pay the quarterly premium falling due April 8, 1913, within the month of grace. The plaintiff replied, alleging that the defendant was estopped to claim a forfeiture of the policy because the plaintiff's intestate had, in response to a letter written by the defendant's state agent, inviting and requesting plaintiff's intestate to make payment of said premium after the expiration of the month of grace, mailed to said state agent of defendant a bank draft for the amount of the premium due, which draft had been cashed by the defendant, and the proceeds thereof placed among its funds, and were still retained by the defendant. A jury having been waived, the caused was tried to the court, resulting in judgment for plaintiff.

The sole question involved in the determination of this case is whether or not the evidence is sufficient to sustain the finding of the court that the policy upon the life of the plaintiff's intestate had not been forfeited at the time of her death or nonpayment of the premium due upon said policy April 8, 1913, or that such forfeiture had been waived by defendant. The month of grace allowed by the terms of the policy expired May 8, 1913. On May 16, 1913, the state agent of the defendant at Little Rock which agent had control of the business of defendant in the state of Oklahoma, wrote the plaintiff's intestate the following letter:

"Albert M. Johnson, President, Robert E. Sackett, Vice President. Robert D. Lay, Secretary. Established 1868. National Life Insurance Company of the United States of America, 29 South La Salle Street, Chicago. Harry M. Ramey, Manager Arkansas and Oklahoma, 6th Floor Front, State National Bank Building. 'The Busy Corner.'

"Little Rock, Ark., May 16, 1913.

"Mrs. Victoria C. Berry, El Reno, Okla.— Dear Madam: In looking over our renewal receipts, we find that we have not as yet received remittance of quarterly premium under your policy No. 110411, due April 8th, $14.08. I feel confident that this must be an oversight on your part, as you have one of the best policies written by this or any other company, and same has been kept in force for five years. If it is not convenient for you to remit the amount of your quarterly premium at this time, if you will sign the inclosed health certificate, which we inclose herewith, also the note for the amount of this premium, we will carry your policy in full force, to the time your next quarterly premium falls due, July 8, 1913. We are always anxious to do everything we can to assist our policy holders in keeping their insurance in force, and under the circumstances will appreciate it if you will let us hear from you by return mail.

"Yours very truly,

"S. S. Reames, Cashier (R)."

On May 24, 1913, plaintiff's intestate wrote

a letter to the state agent of defendant at Little Rock, Ark., and inclosed therewith a bank draft upon a bank in St. Louis, Mo., for the sum of $14.08, the amount of the quarterly premium. Said letter is as follows:

"El Reno, Okla., 5—24—13.

"Mr. Harry M. Ramey, Dear Sir: I was away from home at the time your letter arrived and am sending the quarterly amt. ($14.08)

"Yours resp'ty. (Signed) Mrs. V. C. Berry.
"Please send receipt to me at 616 N. Choctaw, El Reno, Okla."

Upon receipt of this letter and the draft inclosed therein the state agent of the defendant caused the same to be deposited to the credit of the defendant. and the same was paid in due course. On May 27, 1913, the state agent of the defendant wrote to plaintiff's intestate the following letter:

"May 27, 1913.

"Mrs. Victoria Berry, El Reno, Okla. — Dear Madam: I beg to acknowledge remittance of $14.08 in settlement of your premium under policy No. 110411 due April 8th. As this policy lapsed on May 8th, it will be necessary for you to fill out and return the inclosed health certificate. We will then forward same to the home office with your remittance and ask for reinstatement of the policy.

"Very truly yours,            Cashier (R)."

This letter was never received by the insured, as she died on May 28, 1913. Something over a month thereafter the defendant sent a letter to Mr. W. M. Wallace, attorney of record for the plaintiff inclosing its check payable to W. M. Wallace for the sum of $14.08 as a return of the amount sent it by draft by the insured on May 24, 1914. Mr. Wallace refused to accept this check, claiming to have no authority to receive it, and the same was by him returned to the defendant. Upon this state of facts it is contended by counsel for plaintiff that the defendant had waived any forfeiture of the policy because of the failure of the insured to pay the premium falling due April 8, 1913, within the month of grace allowed by the terms of the policy.

It has been repeatedly held by this court that the provisions in a policy of life insurance, providing for its forfeiture for nonpayment of premiums at the time provided in the policy, is a provision for the benefit of the insurer, and may be waived by him. It has been further held by this court that

the insurer may waive the forfeiture by acts from which an intention so to do may be fairly inferred. St. Paul, F. & M. Ins. Co. v. Cooper, 25 Okla. 38, 105 Pac. 198; Pacific Mutual Life Ins. Co. v. O'Neil, 36 Okla. 792, 139 Pac. 270; Pacific Mutual Life Ins. Co. v. McDowell. 42 Okla. 300, 141 Pac. 273; Germania Ins. Co. v. Barringer, 43 Okla. 279, 142 Pac. 1026; Mutual Life Ins. Co. v. Chattanooga Sav. Bk., 47 Okla. 748, 150 Pac. 190, L. R. A. 1916A, 669; American Bankers' Ins. Co. v. Thomas, 53 Okla. 11, 154 Pac. 44; Friend v. Southern States Life Ins. Co., 54 Okla. 448, 160 Pac. 457, L. R. A. 1917B. 208.

In American Bankers' Ins. Co. v. Thomas, supra, Mr. Justice Turner, who delivered the opinion of the court, says:

"It takes no citation of authorities to support the proposition that this condition precedent, being for the benefit of the company, may be by the company waived, and is waived by its accepting and retaining the premium, with knowledge of all the facts."

In the case of Mutual Life Insurance Co. v. Chattanooga Savings Bank, supra, this court says:

"Again, there is another reason why the policy was in force and effect on November 8, 1907, when the assured died. Under the terms of the policy the assured had 30 days of grace from the 7th of October, 1907, in which to pay the premium. The last day of grace had expired on November 6, 1907, the day this draft for $70 was delivered to the state agent of the company. He knew as shown by his own testimony, that the draft could not be presented for payment to the National Bank of Commerce of Kansas City, upon which the draft was drawn for at least two days after it was deposited at Oklahoma City. He deposited the draft to his account on November 7th, that was after the 30 days of grace allowed had expired. This must be taken as an intention on his part to extend the days of grace at least until the time required to present the draft to the Kansas City bank for payment. If this is true, the assured having died on the 8th day of November, the policy was in full force and effect at the time of his death, and it could not be canceled for nonpayment of the draft on the 11th of November."

It is further said in the case last referred to:

"These several acts of the agent of the insurance company, showing a purpose and intention to continue the policy in effect after the expiration of the 30 days of grace, amounted to a waiver by the company, and were not affected by the provision in the policy to the effect that its agents were not authorized to waive any forfeiture thereof."

In the case of Pacific Mutual Life Ins. Co. v. O'Neil, supra, Commissioner Sharp, who wrote the opinion of the court, says:

"That an insurance company may waive any provisions in a policy intended for its benefit is a principle that requires no citation of authorities in its support. Where there has been a breach in the conditions of a policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture, by acts as well as words. It is always required that the company, as well as the insured, should proceed in the utmost good faith. The consideration for the insurance is the premium paid, and if, when paid and appropriated by the company, it may, while retaining the premium, be allowed to plead that the contract of insurance is void ab initio, then in such cases the insurer would be bound only at its pleasure. * * * It would therefore follow, as was said in Masonic Mutual Benefit Ass'n v. Beck, 77 Ind, 203, 40 Am. Rep. 295: 'That a distinct act of affirmance of a contract by a party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or of the right to annul the contract. * * *' In Kidder v. Knights Templars & Masons Life Indemnity Co.. 94 Wis. 538, 69 N. W. 364, the court, in quoting with approval from Cannon v. Home Ins. Co., 53 Wis. 593, 11 N. W. 13, used the folowing language: 'That a party cannot occupy inconsistent grounds or positions; that one who relies upon the forfeiture of a contract cannot, at the same time, treat the contract as an existing valid one, nor call upon the other party to the contract to do anything required by it; or, to apply the proposition to the precise facts in the case, that, as the defendant. in its correspondence with the attorney of the plaintiff, after full knowledge of the forfeiture, saw fit to call for additional proofs, of loss recognizing by this act the continued validity of the policy, it could not, after the plaintiff had gone to the expense and trouble of furnishing these proofs, change its ground and claim that the policy was no longer in force.'"

In St. Paul Fire & Marine Ins. Co. v. Cooper, supra. the court says:

"One of the conditions of the fire insurance policy was that, in case of default in the payment of any note given for premiums the company should not be liable for any loss occurring to the property mentioned therein during the continuance of such default. Held, there being a breach of such condition, the company may waive the forfeiture by acts from which an intention so to do may be fairly inferred. Held, further. that the acceptance of the cash premium by the general agents of the company after default and notice of loss operates as a waiver of the forfeiture, and renders the company liable on the policy from its inception as though the premium notes had been paid when due."

In view of the authorities above cited let us consider the acts of the defendant with reference to this policy of insurance as shown by the record, in order to determine whether or not there was sufficient evidence to support the judgment. It appears from the record that during a long period of time the assured had been in the habit of remitting premiums to defendant's state agent at Little Rock on the last day of grace, and that such remittances were received by and accepted by the defendant several days after the expiration of the last day of grace for the payment of the premiums. The insured having made default in the payment of premium on May 8, 1913, the state agent of the assured, on the 16th day of May, wrote her the letter which is set out in full above. In this letter the attention of the insured is called to the fact that she has not remitted the quarterly premium due April 8, 1913. The letter then says:

"I feel confident that this must be an oversight on your part as you have one of the best policies written by this or any other company, and same has been kept in force for five years." (Emphasis ours.)

There is nothing in the language to advise the insured that the company had availed itself of the forfeiture clause contained in the policy, and had forfeited her policy, and that the same was no longer in force. In fact every expression in the letter indicates to the insured that her policy had not lapsed, but was still in force. Thus she is told, "You have one of the best policies, and same has been kept in full force for five years." The letter further says:

"If it is not convenient for you to remit the amount of your quarterly premium at this time if you will sign the inclosed health certificate which we inclose herewith, also the note for the amount of the premium, we will carry your policy in full force to the time your next quarterly premium falls due July 8, 1912." (Emphasis ours.)

From this statement in the letter the insured would be led to believe that her policy was still in full force, and that. if it was not convenient for her to remit the amount of the premium, if she would sign the health certificate and the note inclosed in the letter, her policy would be carried in full force until the next quarterly premium fell due July 8, 1913. It must be acknowledged that she is not told that her policy would be reinstated, or that the same had lapsed for

nonpayment of the premium, but, on the contrary, she is told that, in the event she could not remit, but would sign the inclosed health certificate and note, the policy would be continued in full force until the next quarterly premium fell due. The insured upon reading this letter could reach no conclusion but that her policy was still in force, and had not lapsed nor been forfeited. She was able to and did remit the amount of the premium due, but she did not sign or return the health certificate. We think that from the language used in the letter she had a right to believe that the health certificate was unnecessary in the event she was able to pay the premium. It is contended by counsel for the defendant that such a construction of the letter written to the insured is hypercritical, and places too strict a construction upon the language used by the agent of the defendant. We think that this construction is not open to the criticism offered by counsel for the defendant for the reason that it places upon the language used by the agent to defendant its plain and logical import. The letter continues:

"We are always anxious to do everything we can to assist our policy holders in keeping their insurance in force, and under the circumstances will appreciate it if you will let us hear from you by return mail."

Here again the insured is told that. the defendant is interested in keeping her policy in force, and not in restoring it to force. So that upon a view of the whole letter we are forced to the conclusion that it warranted the court in finding that defendant treated the policy as still in effect, and that the insured had a right to make the conclusion which she did, that if she could pay the premium due it would be accepted, and her policy continue in force without the necessity of furnishing a certificate of health.

It is said by the Supreme Court of the United States in Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will * * * estop the company from insisting upon the forfeiture though it might be claimed under the express letter of the contract."

In the instant case the insured had every reason to believe that if she paid the premium then due no forfeiture of her policy would occur. She made payment of the premium acting upon that reasonable belief. The defendant, with full knowledge of all the facts relied upon to defeat recovery, received the draft remitted by her, collected the proceeds of it, and placed this money among its funds. It is, however, contended by the defendant that the proceeds of this draft were held in suspense awaiting the receipt of a health certificate from the insured, and they insist that the letter written by the agent for the defendant on May 27, 1913, above quoted, supports their contention. If the construction which we have placed, and which was placed by the trial court, upon the letter written May 16, 1913, be correct, the insured, by forwarding the draft, accepted the terms of that letter, and the defendant had no right to impose later conditions upon the insured for the purpose of reinstating her policy. It will be noted that this is the first time that any reference is made in the correspondence between the insured and defendant as to the necessity of her policy being reinstated. If the defendant, after receipt of the insured's remittance, sent in response to its request for the same, could impose no further conditions upon the insured it does not become necessary for us to determine whether or not the defendant could keep the insured's money in its hands in suspense.

We therefore conclude that there was sufficient evidence before the court to sustain its finding for the plaintiff and to warrant the court in finding that defendant had by its conduct treated the policy as in full force and effect, and that it had thereby waived its right to claim a forfeiture of the policy.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.