## GREAT SOUTHERN LIFE INS. CO. v. BROOKS.

No. 20899. Oct. 31, 1933.

124

Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

V. E. Stinchcomb, for defendant in error.

WELCH, J. This was an action to recover on a policy of life insurance issued upon the life of Mildred Brooks, payable to Lucille Brooks as beneficiary. The parties will be referred to as they appeared in the trial court, where Lucille Brooks was plaintiff and the Great Southern Life Insurance Company, a corporation, was defendant. Judgment was for the beneficiary, and the insurance company appeals.

The question is whether the insurance policy was in force when the insured died, August 13th. This question depends on whether or not the insurance company waived the contract provisions requiring prompt payment of the annual premium when due, or within the grace period, to avoid cessation and lapse of the policy.

The policy provided, "If any premium or note or other obligation given therefor shall not be paid when due, this policy shall thereupon cease." The policy further

provided for the allowance of a grace period of 30 days from the due date, and in event of such payment within the grace period the same would be received the same as if paid on or before the due date. The quarterly premium of $11 was due June 26th, and the grace period expired July 26th.

On July 12th, within the grace period, the insured, Mildred Brooks, or Mrs. R. T. Marcum, sent the insurance company her husband's check for $11, with the advice that she had married R. T. Marcum and desired the policy to show her changed name to Mrs. R. T. Marcum. Thereafter, on July 14th, within the grace period, the insurance company wrote the insured acknowledging receipt of the remittance and enclosing official receipt, which receipt provided, among other things, that:

"This receipt to be valid * * * the amount specified herein must be actually paid. Otherwise this receipt shall be null and void, * * * "

—and this further provision:

"It is understood and agreed that a protested check * * * is not payment, and that any obligation given in exchange for this receipt, when dishonored or not paid at maturity, shall render this receipt null and void. * * *"

The check was not paid when presented at the bank, and on July 21st, within the grace period, the insurance company wrote the insured advising that the check of her husband for the $11 premium had been returned unpaid on account of insufficient funds, and the unpaid check was returned with the request that the unpaid item be taken care of promptly.

Nothing else occurred with reference to the matter prior to the expiration of the grace period on July 26th.

On August 1st, after the grace period had expired, the insurance company wrote the insured as follows:

"We advised you on July 21 that your check for $11, tendered for the quarterly premium due June 26, on your policy had been returned unpaid. On account of the delay in attending to this it will now be necessary for you to furnish us with evidence of insurability before reinstatement can be effected.

"The importance of having ample life insurance protection and having it in good standing at all times cannot be stressed too much. We feel sure that you appreciate this fact and will make every effort to have the policy reinstated at once.

"If you will kindly complete the enclosed health certificate and return same to us with money order or bank exchange for $11 the matter will have our prompt consideration. Also please complete and return the form sent you in connection with change of name along with the policy for indorsement.

"Assuring you of our desire to serve you in every way possible, we are,

"Yours very truly,"

"E. A. Kiker, Asst. Secretary."
"EAK:EB
"Encl"

The insured made no reply to this letter, but on August 5th her husband wrote the insurance company enclosing bank draft for $11 in payment of the item, but he did not complete or return the health certificate or make any reference whatever to the same, nor did he refer to the reinstatement of the policy in any manner. In fact, he made no reference to the letter which the company had written his wife four days previous.

On August 10th the company wrote Mr. Marcum, acknowledging receipt of his letter of August 5th, and the cashier's check for $11, concluding their letter as follows:

"As advised Mrs. Marcum by letter dated August 1, nonpayment of the check within the grace period allowed for settlement of the premium, which expired July 26th, caused the policy to lapse and under the circumstances we shall have to call upon her for the usual reinstatement requirements.

"We are sending a reinstatement blank with this letter, asking that you have it completed by your wife and returned as soon as possible, upon receipt of which we will be in position to give her case the consideration it deserves.

"Yours very truly,

"L. R. Mathews,

"Manager Reinstatement Dept."

Mr. Marcum did not reply to this letter. His wife, the insured, had been seriously ill for some weeks; she died on August 13th, and the beneficiary, who was the plaintiff in the action, insists there is no proof that this letter was delivered and received by R. T. Marcum prior to the death of the insured. At any rate no reply was made to this letter.

Thereafter, on August 22d, and previous to receiving any notice of the death of the insured, the insurance company wrote Mr. Marcum as follows:

"Dear Mr. Marcum:

"It is our earnest desire to get matters in shape to act on the reinstatement of this

policy, which is now lapsed, as soon as possible, and it will be very much appreciated if you will have Mrs. Marcum complete and return the enclosed form of application."

"Yours very truly,

"Manager Reinstatement Dept."

No reply was made to this letter, but thereafter request was made of the insurance company for forms for making proof of death, and on August 27th the insurance company wrote Mr. McGinnis, who had requested forms for proof of death, and also wrote R. T. Marcum advising again that the policy had lapsed on July 26th for nonpayment of the premium, and at that time returned to Mr. Marcum his bank draft for $11 which the insurance company had not cashed.

The controlling question is whether or not these letters and this conduct on the part of the insurance company constituted a waiver of the contract provisions requiring prompt payment of the premium to avoid cessation and lapse of the policy on July 26th.

We regard the law as well settled that such provisions in an insurance policy are for the benefit of the insurer and may be waived by the insurer. National Life Insurance Co. v. Clayton, 70 Okla. 116, 173 P. 356; Bankers Reserve Life Insurance Co. v. Rice, 99 Okla. 184, 226 P. 324; Pacific Mutual Life Insurance Co. v. McDowell, 42 Okla. 300, 141 P. 273; Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 P. 82; St. Paul Fire & Marine Insurance Co. v. Cooper, 25 Okla. 38, 105 P. 198. And likewise that such waiver may be shown by a course of action on the part of insured which treats the policy as a valid and subsisting policy which the insurer could have declared forfeited because of a breach or nonpayment. National Life Insurance Co. v. Clayton, supra; Sovereign Camp W. O. W. v. Tam, 90 Okla. 196, 216 P. 660. And likewise that the insurer may by a course of conduct be estopped from asserting cessation or lapse of a policy for nonprompt payment where there was a course of action or custom to accept payments out of time, as in the case of Pacific Mutual Life Insurance Co. v. McDowell, 42 Okla. 300, 141 P. 273; Knights of the Maccabees of the World v. Johnson, supra.

However, it is quite generally held that the provisions of an insurance policy requiring prompt payment of the premiums, and the provisions for lapse or cessation of the policy for nonprompt payment, are valid, essential, and enforceable provisions of the contract (Klein v. New York Life Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Insurance Company v. Statham, 93 U. S. 24; Bankers Reserve Life Ins. Co. v. Rice, supra); and that the insurer cannot be denied the benefits of such wholesome provisions of the policy, unless the insurer has voluntarily waived the same, or is held to have waived the same by some act indicating an intention not to act and rely upon the lapse or cessation, or has proceeded or acted in a way or manner wholly inconsistent with the enforcement of the provisions for lapse or cessation for nonprompt payment. No authorities are cited which are contrary to these announced rules.

For the purpose of further consideration, we will separate the acts and statements of the insurer in two classes, those occurring prior to July 26th, the date when the provisions for cessation or lapse would become effective, and second, those occurring after July 26th.

Prior to July 26th the insurer received a check for the premium and issued its official receipt, but noted thereon in substance that the validity of the receipt depended upon payment of the check when presented. The check was not paid and the insurer so advised the insured and requested prompt payment. It is true that at no time prior to July 26th did the insurer refer to the date when the policy would become lapsed or cease for nonprompt payment, but the date had not yet arrived when the insurer would have any right to claim lapse or cessation, and we can see no reason why the insurer would be under any necessity in advance of July 26th to make any reference to the possible future cessation or lapse of the policy. The provisions therefor were clearly set out in the policy which had been delivered to, and was presumably in the possession of, the insured herself, and she must be presumed to have known its provisions. Surely the insurer had the right at all times prior to July 26th to urge payment of the premium and to undertake to collect the premium without waiving any rights which would accrue later if the nonpayment continued. At any rate, there is nothing shown by this conduct of the insurer to indicate an intention to waive the provisions of the policy under consideration, nor is there anything here shown which would be inconsistent with a future claim that the policy had lapsed or ceased, nor is there anything here shown to indicate any willingness on the part of the insurer to accept payment after July 26th.

Now, viewing the acts and conduct of the insurer after July 26th, we observe the following: That on August 1st, five days after the policy had lapsed or ceased under its terms, the insurer wrote the insured again suggesting payment of the $11, and at the same time advising that "on account of the delay in attending to this it will now be necessary for you to furnish us with evidence of insurability before reinstatement can be effected," and further, in the same letter, "the importance of having ample life insurance protection, and having it in good standing at all times, cannot be stressed too much. We feel sure that you appreciate this fact and will make every effort to have the policy reinstated at once. If you will kindly complete the enclosed health certificate and return same to us with money order or bank exchange for $11 the matter will have our prompt consideration." Thereafter, the insurer received the bank draft for $11, of which they acknowledged receipt on August 10th, but the health certificate was not returned and the insurer held the bank draft for $11, but wrote Mr. Marcum advising him also as to the lapse or cessation of the policy and as to the necessary requirements for reinstatement. And nothing further occurred prior to the death of the insured. Again, after the death of the insured, but before receiving notice thereof, the insurer wrote the insured in reference to the matter, but again pointed out that the policy had lapsed and repeated its request that the insured proceed to obtain reinstatement. From these letters and this conduct, it is apparent that after July 26th, at each opportunity, the insurer in substance referred to the policy as having ceased or lapsed and to the necessity for reinstatement, as well as the necessity for payment of the $11, and we find nothing in this conduct of the insurer, or in these letters, which is inconsistent with the claim of the insurer that this policy ceased and lapsed on July 26th. It is true the insurer urged payment of the premium, but in each instance it also urged reinstatement of the policy. The solicitation of reinstatement of lapsed policies is in line with the business of the insurer, as well as solicitation for the issuance of new policies, and surely an insurer may solicit reinstatement without being held to have waived cessation and lapse. The only conduct on the part of the insurer in this case which might have the slightest tendency toward inconsistency was its conduct in retaining the $11 draft which it received on or about August 10th, but it must be noted that this draft

was transmitted to the insurance company. not by the insured herself to whom the company had previously sent the reinstatement or health certificate form, but from her husband, R. T. Marcum. Nor did the insurance company retain the draft then without writing Mr. Marcum and calling his attention to the failure up to that time to return the health certificate or reinstatement form. The insurance company had written requesting two things, namely, that the $11 be remitted, and that the health certificate or reinstatement form be furnished. If the insurance company had received both and retained them, then the reinstatement might have been properly effected, but if they received either one without the other, we see no reason why they could not retain either document for a reasonable time pending the arrival of the other document, without being held to have waived the cessation or lapse, or without becoming estopped to assert the lapse or cessation. It is to be noted that the insurance company had theretofore clearly advised the insured that the policy had lapsed and ceased, and that when the company received this draft from Mr. Marcum, husband of the insured, the company immediately advised him as to the cessation and lapse of the policy and the necessity for reinstatement. It is to be noted also that the insurance company did not cash the draft, but temporarily held it and subsequently returned it to Mr. Marcum, who had sent it.

The beneficiary, as plaintiff in this action, urges that this case is controlled by National Life Insurance Co. v. Clayton, 70 Okla. 116, 173 P. 356, where it was held in substance that a letter written after the date of cessation or lapse of the insurance policy for nonprompt payment of premium was held to constitute a waiver, but in that case the letter referred to the policy as still being and remaining in force, and upon that construction of the letter this court properly held a waiver occurred, because that treatment of the policy as being in force was clearly inconsistent with the thought that the policy had theretofore ceased or lapsed, and this court in the second syllabus paragraph announced the rule in these words:

"Any declaration or course of action on the part of an insurance company which treats a policy, which the company could declare forfeited because of a breach of the conditions of the policy, as a valid and subsisting policy, which declaration or course of action is relied upon and acted upon by the insured, will constitute a

'waiver' on the part of the insurance company of its right to forfeit such policy because of such breach of the conditions thereof."

In the instant case, in the letters written after July 26th, there is no treatment of the policy as being in force, and the rule in the Clayton Case, supra, is therefore not in point.

We conclude in this case that the insurance policy by its plain terms and provisions ceased and lapsed on July 26th for nonprompt payment of the premium. That the insurer did not waive this provision of the policy and was not estopped to assert the cessation or lapse. That the policy was never reinstated and was not in force when the insured died August 13th, and that the beneficiary, as plaintiff, must be denied any right to recover.

Upon conclusion of the trial in the district court both plaintiff and defendant moved the court for an instructed verdict. The trial court directed a verdict for the beneficiary under the policy, who was plaintiff. The instructed verdict was thereupon returned by the jury. Judgment was rendered on the verdict and motion for new trial was overruled.

For the reasons heretofore stated, the trial court erred in instructing a verdict for plaintiff. The trial court should have instructed a verdict for the defendant. There was no evidence upon which a verdict for the plaintiff could have been sustained. The judgment for plaintiff must be reversed and the cause remanded, with directions to the district court to dismiss the action.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, OSBORN, and BAYLESS, JJ., concur. SWINDALL, McNEILL, and BUSBY, JJ., absent.