ROGALIA SEWELL v. CONTINENTAL CASUALTY COMPANY.

[46 South., 714.]

1. INSURANCE. *Accident policy. Forfeiture. Reinstatement. Receipt of premium after death of insured. Knowledge.*

In the absence of knowledge of the death of the insured, the receipt thereafter by an accident insurance company of a premium on a forfeited policy, containing unperformed conditions for its reinstatement, does not reinstate the policy.

2. SAME. *Waiver.*

In the absence of a waiver compliance with the conditions of a forfeited accident insurance policy on the subject is essential to its reinstatement.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Sewell, appellant, was plaintiff in the court below; the casualty company, appellee, was defendant there. The suit was on an accident insurance policy, issued by appellee to plaintiff's husband and claimed to be in force at the time of his accidental death. When plaintiff rested her case, on motion of defendant all of the evidence was excluded and the jury instructed to return a verdict for defendant. The opinion of the court states the facts.

*Quin & Williams,* for appellant.

The principal question before the court on this appeal is whether or not the court below had the right to decide, as a matter of law, that the premium had not been paid. Certainly the appellee by its conduct led appellant and her husband to think that the policy was in full force and effect, up to the time of the death of the husband. It cannot be denied that deductions were made from the wages of the husband to pay the instalments necessary to keep alive the insurance. Under the circumstances

the action of the court below constituted reversible error. *Fidelity, etc., Co.* v. *Johnson,* 72 Miss., 333, 17 South., 2.

The appellee waived the non-payment of the May instalment by its course of dealings with appellant's husband, and fully indicated that as to the months of May and June the policy was in force, by mailing out its demand for the May and June collections on premiums account in the latter part of June. *Union, etc., Ins. Co.* v. *Duval* (Ky.), 46 S. W., 518; 2 Joyce on Insurance, § 1379.

It is an elementary principle of law that the burdens and responsibilities of parties who contract must be reciprocal, and manifestly the appellee company could not legally insist on a forfeiture of the accident policy and also insist upon payment of the instalments on premium account. *Insurance Co.* v. *Eggleston,* 96 U. S., 572; *Hartford, etc., Co.* v. *Unsell,* 106 U. S., 30; *Phoenix Ins. Co.* v. *Doster,* 96 U. S., 234; *Eury* v. *Standard, etc., Co.,* 89 Tenn., 427; *Moreland* v. *Union, etc., Ins. Co.,* 97 Pa., 15; *Crowder* v. *Continental Casualty Co.,* 91 S. W., 1017; *McNicholas* v. *Prudential Ins. Co.,* 77 N. E., 225; *Farmers' Ins. Co.* v. *Kinsley,* 101 Va., 236; *Continental Casualty Co.* v. *Jennings,* 99 S. W., 423; *Miss. Home Ins. Co.* v. *Dobbins,* 81 Miss., 630, 33 South., 506.

The question of appellee's liability under the circumstances should have been left to the jury for determination. *Hodgson* v. *Guardian Life Ins. Co.,* 97 Mass., 144, 35 N. E., 855; *Insurance Co.* v. *Norton,* 96 U. S., 234; *North American, etc., Ins. Co.* v. *Bowen,* 102 S. W., 163.

It is the policy of the law to hold that the contract of insurance must be construed as liberally as possible in favor of the assured.

If the sum of twenty dollars, earned by appellant's husband and reserved by the railroad company, was in the hands and keeping of the railroad company on June 19, 1906, the date of the death, then the appellee is liable on the policy. And if in any way the appellee had waived the actual payment of the first premium, then it is liable.

*Price & Whitfield* and *Manton Maverick,* for appellee.

It must be borne in mind that the application for insurance and the paymaster's order and the policy itself, all taken together, constitute the contract of insurance. The application distinctly stipulated that default in payment of instalments on premium account, by a date named, would invalidate the policy, and that when void it could become in force again only at the option of appellee and by the applicant's tendering payment at appellee's general office in Chicago, reinstatement of risk to take effect only after receipt of such payment. The application further stipulated that no claim for loss arising between the time of such forfeiture and time of subsequent reinstatement should be good against the appellee. And at the end, the application recited that "I hereby waive any notice of payment or non-payment of said instalment, and agree that should default be made in the payment of any of the above specified instalments and the defaulted instalment be thereafter paid as above provided, then and in that event such payment shall reinstate my policy only from the date of the receipt of such payment at the general office of the Continental Casualty Company."

It will appear from the foregoing that by the terms of the contract of insurance, if the assured should be in default in the payment of the first instalment of premium, due out of his May wages, then the policy of insurance would lapse and remain lapsed until payment of such defaulted instalment should be accepted by appellee at its Chicago office. Now, it is obvious that, in case the assured was in default in the payment of the first instalment and was killed before he or any one else for him tendered the instalment to the appellee at its Chicago office, there could in no event be a recovery on the policy.

Learned counsel for appellant rely to a great extent on the case of *Fidelity, etc., Co.* v. *Johnson,* 72 Miss., 333, 17 South., 2, but that case can have no application here except to reinforce appellee's contention, because the language of the contract in the case cited is entirely different from that in the case at bar.

In the case cited, the contract was as follows: "In case the assured should fail to leave in the hands of the paymaster the instalment of premium as agreed in said order, this policy shall be void." But in the case at bar the pay-order is made a part of the policy, and such pay-order expressly constitutes the paymaster the agent of the assured and further expressly provides that the actions of the paymaster are at the risk of the assured, and that, if for any reason whatever, payment is not made, the policy shall be void.

Reliance is also placed, by appellant, on *Mississippi Home Ins. Co.* v. *Dobbins,* 81 Miss., 630, 33 South., 506, but that case is manifestly different from this. In that case the policy provided that "It may also be terminated at any time at the option of the company, giving written or verbal notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term of the policy," and no part of the unearned portion of the premium was returned or offered to be returned, although the insured had paid the full premium for three years. In the present case Sewell, the assured, paid no part of the premium, and no instalment was sought to be turned over to the appellee until after Sewell's death.

In *Continental Casualty Co.* v. *Jasper* (Ky.), 88 S. W., 1078, the Kentucky court rendered its decision in favor of the present appellee in a case where the same form of paymaster's order and same form of policy as in the present case were involved. In the case cited the money consideration for the policy sued on was an annual premium of $10, to be paid in four instalments of $2.50 each, the first payable out of the insured's January wages. Orders were given to the Casualty Company by the insured upon the paymaster of the railroad company. Owing to the fact that the insured gave his name in to the company as Benjamin F. Jasper, although he was known commonly and designated on the railroad company's pay-rolls as Frank Jasper, the instalment due out of his January wages was not retained by the paymaster for remittance to the Casualty Company. It was paid instead to the insured who was notified

promptly that his policy had lapsed in consequence. The decision in the case recites the facts further, and applies the law, as follows: "Before any further payment became due, insured was accidentally killed by a railroad train. A few days afterward his widow, appellee, who was the beneficiary named in the policy, paid to the paymaster of the railroad company for transmission to the appellant, the $2.50 due in January past, and was delivered by the paymaster a receipt therefor, which had been issued and sent to him before the January instalment became due, so that it could be delivered to insured when that amount was deducted from his wages. The paymaster was without authority to receive this payment on behalf of appellant, after the death of the insured; nor was he the agent of appellant in that transaction. On the contrary, in the absence of such an agreement, he was the agent of both parties in such matters. He was the agent of the insured to pay over from his wages the agreed amount as it became due on his premium. He was the agent of the insured in remitting it to the home office of appellant. It was clearly shown that insured paid nothing whatever for his contract. It was lapsed by its express terms when the accident occurred. A peremptory instruction should have been given to the jury upon this showing."

It will be noted that just as soon as the appellee knew of the death of the applicant, Sewell, which death occurred before any of the premium had been paid, it sent its representative to McComb to investigate the facts, and as soon as the facts were known, it tendered the premium back to the proper representative of the applicant.

It cannot be held that the paymaster's order was an assignment of Sewell's wages such as to operate as a payment of the instalment of premium. 19 Am. & Eng. Ency. of Law (2d ed.), 46, 47; 1 Cyc., 242, par. 3; *York* v. *Railway, etc., Ass'n.* (W. Va.), 41 S. E., 227; *McMahan* v. *Insurance Co.,* 77 Iowa, 227, 42 N. W., 179; 16 Am. & Eng. Ency. of Law (2d ed.), 850.

On the question of whether the insured is entitled to notice

of non-payment before the policy became void, we refer this court to the case of *Higgins* v. *Aetna Life Insurance Company,* 51 S. E., 683, wherein the court says:

"To hold that though the insured failed to earn the wages upon which he gave the order, yet it was necessary that the insurance company should give him notice of his failure and the consequent non-payment of his order, would be to strike down the business in which the defendant is engaged and deprive those employed in the lower grades of railroad service of the opportunity to insure. They constantly change from place to place, and it would be impracticable business enterprise for an insurance company to insure them on the credit of wages to be earned, if upon every failure to earn the wages the company should be required at its peril to find them, notify them of that which they already knew, and return the order." *Brown* v. *Pacific Life Insurance Co. of California,* 82 S. W., 1122.

Argued orally by *Percy E. Quin,* for appellant, and by *G. Q. Whitfield,* for appellee.

CALHOON, J., delivered the opinion of the court.

One Sewell was a fireman on the Illinois Central Railroad. On April 24, 1906, he made application to the appellee company for an accident policy. The payments were to be made by orders on the paymaster of the railroad company, and the deceased, Sewell, gave the orders, with directions to charge the amounts against the pay account of the applicant, and the orders recite for the payment of $10, the first instalment from his wages for May, 1906, the second instalment of $10 to be paid from his wages for June, 1906, the third instalment of $10 to be paid from his wages for July, 1906, and the fourth instalment of $10 was not to be paid at all if the others were paid when due. In the order itself it is stated as the understanding between the parties that, if the first, second, and third instalments were paid when due, the fourth instalment should not be collected. The order further states that, "if for any reason whatever payment for

any instalment be not made as above specified, then all my rights under said policy and the rights of my beneficiary thereunder shall at once terminate and be void," and the order waives any notice of payment or nonpayment of the instalments, and specifies that on default in the payment of any one of them, "and the defaulted instalment be afterwards paid as above provided, then in that event such payments shall reinstate my policy only from the date of the receipt of such payment at the general office of the Continental Casualty Company." The order specifies the agreement that, should Sewell be discharged from or cease to be in the service of said railroad company before the first of said instalments become due, "then all my rights and the rights of my beneficiary in said policy shall immediately cease, unless I notify the secretary of the said Continental Casualty Company in writing within three days after leaving said service and remit said instalment with said notice." The appellant, Rogalia Sewell, was made the beneficiary in the policy. In the application for the insurance it is made a part of this contract that, if any one of these payments was not made by twelve o'clock noon of the day when due, all of the rights of the applicant under the policy should become void, and that the policy could only be reinstated "at the option of the company and by tendering payment at its general office in Chicago, and if accepted, the reinstatement shall take effect from and after receipt of such payment, and no claim for loss arising between the time of such forfeiture and reinstatement shall be good against the company." The application further provides a waiver of notice of payment or nonpayment, and an agreement by the applicant that, on any default of any payment and a subsequent payment, reinstatement could only be had from the date of such payment at the general office of the Continental Casualty Company.

It will be noted that the first payment under the order was to be made from the wages of the applicant for the month of May, 1906, and, of course, that was payable on the last day of May or the first day of June, 1906. It is immaterial which. As a

matter of fact, Sewell earned no wages whatever for the month of May, 1906, and, of course, under the contract his policy then became void, unless reinstated under the terms of the contract. The applicant was killed on the 19th day of June, 1906, and the appellant, his beneficiary, made claim for the amount of the policy, and on the trial the court below gave a peremptory instruction to the jury to find for the appellee. This peremptory instruction was based on the liability or nonliability of the casualty company on the facts herein before stated. We need pay no attention to anything else in the record, except to say that we find nothing to justify the court in sustaining any claim of waiver by the company based on proofs of loss. The very correspondence in reference to that shows that, so far from any waiver being contemplated, it was distinctly stated that there was to be no waiver considered, and we find no error in any other act on the part of the appellee. We regard it as plain that this policy was forfeited by nonpayment of the May wages, and under the contract we cannot see how this defect could be cured, except by reinstatement according to the terms of the contract, by payment of the defaulted sum at the general office of the company and reinstatement from the date of the receipt of the money. We do not think any case cited conflicts with this conclusion; every contract of insurance being determinable by its own provisions. After Sewell's death, and after the policy was forfeited, as we have hereinbefore decided, twenty dollars were sent to the company on behalf of Sewell; but, as soon as the company learned of Sewell's death, it sent its agent to investigate, and that agent tendered the premium back.

*Affirmed.*