## NATIONAL FIDELITY LIFE INS. CO. v. STROUD.

No. 24581.   March 26, 1935.

Ramsey, deMeules, Martin & Logan and Morrison, Nugent, Wylder & Berger, for plaintiff in error.

Frank Hickman and Irvine E. Ungerman, for defendant in error.

PHELPS, J.   The parties will be referred to as they appeared in the trial court.

This is a suit to recover on a life insurance policy.   Since the only question involved is whether the policy was in force at the time of the death of the insured, a rather extended statement of facts is necessary.

On May 5, 1930, the defendant issued its policy on the life of Ramey R. Stroud, a young man 21 years of age, in the amount of $2,000, the annual premium on which was $59.68.   The beneficiary was the insured's father, Franklin T. Stroud, who was also the agent for the company and sold the policy.   The first year's premium was paid in advance, thus keeping the insurance in force until May 5, 1931.   The policy contained the usual 30-day grace period in which to pay premiums.   The policy had attached to it certain dividend coupons, which, according to the terms of the policy, could be applied, the same as cash, in payment of the annual premiums.   There was a provision in the policy, however, that if the premiums were paid in semi-annual or quarterly installments, the corresponding coupon could not be applied on the premium payments until the final installment of the annual premium was paid.   When the second annual premium fell due on May 5, 1931, it was not paid.   However, on May 15th (within the 30-day grace period) the insured mailed to defendant a post-office money order for $7 and the dividend coupon of $8.96, aggregating the sum of $15.96, as a "payment for the first quarter of this year."   Defendant cashed the money order, but on May 21st returned the coupon to the insured, calling his attention to the provision of the policy that this coupon could not be used in payment of the premium until the last installment of the current year's premium was paid.   In this letter defendant said:

"We enclose extension agreement showing credit for your remittance of $7 and carrying the balance of the annual premium to Aug. 5.   Please sign and return promptly for record."

This extension agreement was dated as of May 5th.   It was signed by the insured and returned to defendant, and reads as follows:

"I am handing you herewith $7 and request that you extend to August 5, 1931, the time for payment of the balance of annual premium of $59.68 due this day on policy No. 37773, said premium to bear interest at the rate of six per centum per annum from date.   In consideration of such extension I agree as follows:

"1st.   That if said premium and interest be not paid on said date, I shall immediately pay you at your home office, with interest as above, the proportionate part of said premium covering the extension granted and said policy shall be forfeited and void except as otherwise provided by its terms.

"2nd.   That no portion of said premium has been paid and that the remittance herewith made you shall be held by you until the end of extension period, to be then subject to my order if I comply with the provisions hereof, but to be retained by you in event of my failure to do so.

"3rd.   That the first month of the extension of time under this agreement is to run concurrently with the 31 days of grace allowed by the policy for payment of this premium, and that there will be no additional grace period at the expiration of this extension.

"(Signed)   Ramey R. Stroud,
"Insured."

On August 18th, defendant wrote the insured calling his attention to the fact that

his policy had lapsed, and among other things said:

"Your extended premium is a little past its due date. Did you forget it? Perhaps you did not realize that no days of grace follow an extension. Of course, you'll want to take care of it, now that you have this reminder. Also, please complete and return the enclosed health statement, along with your check for the amount shown below."

On August 24th, this letter was returned to defendant marked "unclaimed, unable to locate."

On September 2d, W. F. Stroud, an uncle of the insured, wrote defendant and inclosed a cashier's check in the sum of $16.06 "in payment of one quarterly premium policy of Ramey R. Stroud." On September 3rd, defendant replied as follows:

"We acknowledge receipt of check for $16.06 which you have tendered to apply on the above policy. In May, a part payment of $7 was made on the annual premium and extension agreement signed carrying the balance to August 5. As there are no days of grace on extension premiums, it is now required that satisfactory evidence of present good health be furnished before we may credit the check of $16.06. We enclose health blank to be completed by the insured. Since the annual extension is already on record, upon approval of health statement, your check of $16.06 will be credited on the annual premium and the balance re-extended to December 5."

On September 14th, Mr. W. F. Stroud replied to defendant's letter saying that the insured "cannot be reached at this time." On September 16th, defendant replied to Mr. Stroud's letter and recited the various steps taken since the issuance of the policy and closed by saying:

"We are unable to apply the money you have now tendered until evidence of insurability has been furnished and we would suggest that you forward our health blank to Mr. Ramey R. Stroud."

On September 17th, Mr. Stroud replied to this letter saying:

"Since the matter of keeping up the payment of this policy was left in my hands all I can do is to ask that you either credit the cashier's check as payment of a quarterly premium, sending me receipt for same, or return the check sent you. I have done all that I can do in the matter and I await your reply returning either the check offered in payment of the premium or a receipt for same."

On September 21st, defendant wrote Mr. Stroud (uncle of the deceased):

"We are returning, enclosed, cashier's check No. 79021 for $16.06. This was received after the above policy lapsed, and as reinstatement has not been applied for, cannot be credited thereon."

On September 30th, the father of the insured, the beneficiary under the policy, wrote defendant inclosing proof of death showing that the insured died on September 20th (the day before defendant wrote the last letter to the uncle of the insured).

It developed in the evidence that in July following the issuance of this policy in May, the insured became ill of "galloping" or quick consumption, resulting in his death.

Plaintiff filed suit in the court of common pleas of Tulsa county, alleging that the policy was in full force and effect at the time of the death of the insured, and prayed for judgment for the full amount of the policy.

Defendant answered, pleading that the policy had lapsed, and, therefore, there was no liability.

Upon trial, when plaintiff rested his case, defendant demurred to the evidence. The court overruled the demurrer. Defendant elected to stand on the demurrer and judgment was rendered against it, to reverse which this appeal is prosecuted.

It is the contention of plaintiff in error that when the annual premium was not paid when it fell due on May 5th, or within the 30-day grace period thereafter, the policy lapsed except in so far as it was kept in force by the "extension agreement," and that the extension agreement became the contract between it and the insured, and that the said extension contract measured the rights of the insured and defined the liabilities of the insurance company. On the other hand, it is contended by the beneficiary under the policy that the $7 payment, when deposited with the insurance company, extended the same and kept it in force for a period of time in proportion to the full quarter that the $7 payment bears to the $16.06, the amount required to pay the full quarterly premium, or until September 6th, and that a full quarterly premium having been tendered before that time expired and held by the insurance company, the policy never lapsed, but was in force on September 20th, when the insured died.

As sustaining the contention of plaintiff

in error, counsel cite Kansas City Life Insurance Co. v. Leedy, 62 Okla. 131, 162 P. 760. In that case during the grace period the insured executed his note for the premium instead of paying the cash. He failed to pay it when it came due and the company declared a forfeiture. He then tendered the full amount of the note, which the company refused to accept, and this court upheld the contention of the insurance company, basing the opinion upon numerous authorities therein cited, to which reference is hereby made.

In Kroksather v. Western Union Life Ins. Co., 193 N. W. 48, the Supreme Court of North Dakota on this subject said:

"An extension beyond the grace period in the policy is no part of the policy contract and depends entirely for its effect upon such collateral agreement as may be made controlling it. If, therefore, a policy holder takes the benefit of the delay or extension contracted for in a separate agreement, he is bound to perform the conditions on which it is granted, or to submit to the consequences of the failure to so perform." (Citing cases.)

In the instant case, when the insured tendered the $7 to the insurance company, he said:

"That no portion of said premium has been paid and that the remittance herewith made you shall be held by you until the end of the extension period, to be then subject to my order if I comply with the provisions hereof, but to be retained by you in the event of my failure to do so."

He further said:

"That if said premium and interest be not paid on said date (August 5, 1931) I shall immediately pay you * * * the proportionate part of said premium covering the extension granted, and said policy shall be forfeited and void. * * *"

It is difficult to imagine a case where the language is plainer or the intention of the parties more clearly expressed. In substance the insured said: You take this $7 and give me three months time to pay the balance of the annual premium. If I do not pay it within that time, you keep the $7 and I agree that said policy shall be forfeited and void.

In Brown v. Connecticut Fire Insurance Co., 52 Okla. 392, 153 P. 173, this court said:

"Courts do not make such contracts for the parties, but simply construe them for the parties when called upon to do so, and

that in so doing the courts look to the plain import of the language used."

And part of the third paragraph of the syllabus reads as follows:

"A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself."

Applying this rule to the extension contract under consideration, there is but one conclusion that can be reached.

Also in Dreeben v. State Mutual Life Ins. Co., 29 F. (2d) 963, the Circuit Court of Appeals used the following language:

"The premium for 1925 not having been paid when due, or within the grace period, appellant cannot base her claim for recovery upon the provisions of the policy. but must rely upon the extension agreements. Those agreements did not extend the premium itself, but, on the contrary, extended only the time for payment of premium for six months from the date it was due. In clear, unmistakable language it was provided that the time of payment was extended until the 1st of July, and that if the premium should not be paid on or before that date the policy should be considered as having lapsed on the due date of the unpaid premium. The grace provision of the policy was not incorporated in the extension agreements, and therefore the time for payment was not extended for 31 days beyond the expiration thereof; that is to say, beyond the 1st day of July. Holly v. Metropolitan Life Ins. Co., 105 N. Y. 487, 11 N. E. 507; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204."

Upon authorities above cited and quoted from, we conclude that the trial court erred in overruling defendant's demurrer to the evidence.

The judgment is, therefore, reversed and the case dismissed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.