## ILLINOIS BANKERS LIFE ASSUR. CO. v. CUTLIP.

No. 26121. Sept. 25, 1935.

Everest, McKenzie & Gibbens, for plaintiff in error.

Keagy & Williams, for defendant in error.

PER CURIAM. Herein plaintiff in error will be referred to as defendant and defendant in error as plaintiff, as they appeared in the trial court, where plaintiff brought this action, as the assured, on a $1,000 20-payment life insurance policy written by defendant, against defendant for damages for the wrongful forfeiture of the policy. This case involves the right of the defendant to forfeit the policy, and if it had, then whether defendant waived such right, where the September, 1933, quarterly premium of $10.32, with interest, became due November 1, 1933, under an extension agreement note, and was mailed to defendant November 2nd and received by defendant November 4, 1933, the defendant retaining $7.20, the earned premium to November 1st, and returning the remainder.

Plaintiff by her amended petition alleged that the policy was issued to her on March 1, 1931, as of June 1, 1918, in exchange for another policy in another company; that on November 4, 1933, all premiums due had, been paid and said policy was in full force and effect, and defendant, without the consent and against the will of plaintiff, declared said policy forfeited and canceled same, and, although plaintiff was in good health, told plaintiff she was no longer an insurable risk; and plaintiff alleged she was thereby damaged in the sum of $1,000, for which she prayed judgment. Defendant by answer admitted the execution of the policy of insurance, but denied the policy was in force on November 4, 1933, and alleged same was forfeited by failure of plaintiff to pay said premium on November 1, 1933; and further alleged that said premium became due September 1, 1933, for which a premium extension note and agreement was executed by plaintiff by the terms of which the policy would become void if said note was not paid when due on November 1, 1933; that said note was not paid on November 1, 1933, and thereafter plaintiff made application for reinstatement wherein she admitted the policy had lapsed, and alleged that the policy was never reinstated. Plaintiff's reply was a general denial. Upon the issues so joined trial was had to a jury. At the close of plaintiff's evidence defendant demurred, and at the close of all the evidence moved for a directed verdict and saved its exceptions to adverse rulings. Then by agreement of the parties and consent of court, the jury was discharged for the purpose of permitting the court to determine the question of law and render judgment. The court found for and rendered judgment in favor of the plaintiff for the sum of $470.70 with interest. To indicate the theory upon which the court rendered judgment, we quote therefrom:

"Of course, if the forfeiture clause in said premium extension agreement which I have just read should be enforced literally by its harsh terms the judgment must be for the defendant. It is not disputed in the evidence that on November 2, 1933, perhaps in the gray dawn after the solemn hour of midnight when the great bell had tolled the death of this policy, this widow woman, out of a pitiful and meager pension allowance bought a money order for $10.32, plus the interest, or total of $10.38, and mailed it to the defendant herein, the insurance company, at its office in Monmouth, Ill., and they received it on November 4, 1933.

"The pleadings in this case have not been drawn with that care as to present clearly to a court of equity the issues. Counsel for plaintiff are not to be censored for failure to come into court and pray for the cancellation of a premium extension agreement of which they perhaps had no notice whatever, same being in the possession of the de-

fendant and not brought to light until the trial of this case."

And at another place in the judgment, the trial court said:

"The insurance company got this money, the $10.38, and kept it. They notified the plaintiff that they had received the money order and notified her that the policy was dead—dead as a door nail midnight November 1, and exacted of her at the critical period in a woman's life at the age of 46 years that she should take a medical examination for which their doctor got paid, and divers other sources of revenue that I know not what it might be. If there ever was a more unconscionable proposition in a court than this, I don't know what it is, and for that reason I hold that such an unconscionable contract should not be upheld, and I further find from the evidence that when Nina G. Cutlip signed this premium extension agreement she thought she was signing a note, and when she signed it she thought that the due date of it was November 4, and from her standpoint, according to what she thought, she had paid it. But if it was a note, then it is just a matter of collecting the note whether she paid it or not. If they accepted the note that is a payment and would have kept the policy in full force and effect until the last day of November, and having this view, and so finding, I must render judgment in favor of the plaintiff."

According to the evidence the plaintiff, in 1931, was a member of the Illinois Bankers Life Association, an assessment life insurance association, and held its certificate of $1,000, dated May 18, 1914, payable upon the death of assured. Said policy carried no reserve, assessments were to be paid during the life of assured, and it provided for lapse upon failure to pay assessments when due. Defendant company, in 1929, reinsured said association, and members of the association had the right without medical examination, to exchange their certificates therein for life insurance policies written by defendant company upon adjustment of premiums and reserves. Plaintiff exercised this right, and in March, 1931, applied for and received the policy involved herein, a 20-payment life policy for $1,000, with March 1, 1931, as the effective date of transfer. As an adjustment of premiums and reserves, said policy was dated as of June 1, 1918, so that plaintiff would have the benefit of premium at age 31, and of the policy becoming fully paid up on June 1, 1938, or 7¼ years from date of exchange, and plaintiff signed and delivered to defendant company a certificate of loan for $329.78, which bears interest from March 1, 1931, at the rate of 6 per cent. per annum, and which sum represented the reserve that would have accumulated on the policy had all premiums been paid from July 1, 1918, to March 1, 1931. This was necessary for the reason that the former certificate carried no reserve. No part of this certificate of loan or interest thereon has ever been paid, and with $52.76 interest, the amount owing thereon November 1, 1933, was $382.54. It was provided in the policy that same should be incontestable after two years from date provided premiums were paid; that all premiums would be due and payable at the home office in Monmouth, Ill., on or before date due, and that upon default in payment of any premium, or any note or interest thereon, whether such note be given for the first or subsequent premium, the policy would be null and void and all premiums forfeited to the company. A clause of the policy provided that a grace of 31 days (without interest) would be granted for the payment of every premium or installment thereof after the first premium, during which time the policy would remain in force. Another clause provided for reinstatement of the policy at any time after any default in premium payment upon written application of assured and evidence of insurability satisfactory to the company. Another clause provided for a cash loan on the policy when no premium be in default, in the amount shown in the Table of Values set forth in said policy, but that from such loan would first be deducted any existing indebtedness to the company secured by the policy. Said Table of Values shows that on November 1, 1933, this policy had a loan value of $354, less $382.54, the amount of said loan certificate. Another clause, styled "Non-Forfeiture Provisions," provided that assured might during the period of 31 days following the due date of any unpaid premium, select one of three options: The first option provided for a cash value of the policy equal to its cash loan value; the second option provided that a policy of paid-up insurance would be issued for such amount as the cash value of the policy would purchase as a net single premium at the age attained by assured, but that the amount of paid-up insurance would be reduced by deducting from the cash value of the policy any indebtedness to the company on account of or secured by the policy; the third option provided that the assured may have the policy continued in force as a nonparticipating extended term insurance without loan value, from the date of unpaid premium for the period indicated in the Table of Extended Insurance set forth in said policy, but that if there was any indebtedness to the company on account of or secured by the policy, same should be deducted

from the net value of the extended term insurance and the policy continued for a period purchased by the net value thus determined, applied as a **net single premium** at age of assured; and said clause further provided that upon default in payment of any premium, if assured should not surrender the policy for its cash value or for a policy of paid-up insurance, then the policy would automatically be continued in force as extended term insurance. From the foregoing cash loan and option provisions, it is clear that, with said indebtedness of $382.54 against the policy on November 1, 1933, and a cash or loan value of only $354, there was no reserve on the policy applicable to a continuance of the insurance after said date. Another clause provided that no change or modification could be made, nor could any forfeiture be waived or the time for payment of any premium be extended except by the consent of the defendant company duly recorded by written endorsement over the signature of its president, vice president, secretary or assistant secretary.

According to the evidence, the September 1, 1933, quarterly premium on the policy in the sum of $10.32 was not paid on said date, and within the 31 days of grace on September 26, 1933, plaintiff executed and defendant company accepted the following premium extension note and agreement:

"Premium Extension Agreement No. ____ Monmouth, Illinois, September 26, 1933. On or before November 1, 1933, after date, without grace and without demand or notice, I promise to pay to the Illinois Bankers Life Assurance Company at its office in Monmouth, Illinois, for value received, the sum of ten and - - 32/100 ($10.32) with interest at the rate of six per cent. per annum from date, and with attorney's fees. This promise to pay is accepted by the company at the request of the promisor, together with—no —Dollars deposited in cash on the following express agreement; The time of payment of the premium of $10.32 due on the 1st day of September, 1933, under the terms of Policy No. 325817 issued by the Company on the life of Nina G. Cutlip is hereby extended until midnight of the due date of this obligation, and if payment in full is made on or before this due date, such payment, together with the cash deposit heretofore referred to, shall be accepted by the company in full payment of the above-named premium, and all rights under the policy shall be the same as if the premium had been promptly paid when due. I understand and hereby agree that if this premium extension agreement is not paid at maturity, said policy shall without notice or any affirmative act on the part of the company or any of its of-

ficers or agents, be null and void and the policy shall automatically cease to be a claim against the company, and the company shall retain the cash deposit as part compensation for the rights and privileges herein granted; and that this premium extension agreement and accrued interest shall without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face with interest, that the time the insurance has been continued by this premium extension agreement bears to the whole time covered by said premium. I understand and agree that neither this premium extension agreement nor any extension thereof, is given or accepted as a payment of said premium.

"Nina G. Cutlip.

"Post Office 1105 E. Park, Okla. City, Oklahoma.

(on back side)

"7.20 applied on Ext 12/28/33.

"Stamped: Received Sep. 29 1933, 8:15 o'clock."

During the month of October, 1933, defendant company wrote plaintiff at her address, 1105 E. Park, Oklahoma City, Okla., three letters calling to her attention and warning her that said extension agreement was due November 1, 1933; the first dated October 14, 1933, which she admits she received, informed her that said agreement would be due in the sum of $10.32 and 6 cents interest on November 1, 1933, and warned her that her insurance would lapse if said remittance did not reach the defendant company on that date; the second dated October 18, 1933, which she admits she received; and the third dated October 25, 1933, again informing her and calling to her attention the fact that the amount of said agreement, $10.38, was due November 1, 1933, and warning her that her insurance would lapse if payment was not sent on or before that date. This last letter plaintiff denies she received. Said payment was not mailed on or before November 1, 1933, but on November 2, 1933, plaintiff forwarded a money order in said amount, which was received by the defendant company at its home office on November 4, 1933, and on said date defendant wrote plaintiff acknowledging receipt of same, but advising plaintiff same was not mailed at Oklahoma City until November 2, 1933, which was after the maturity and due date of the extension note and agreement, and that it would be necessary for defendant to furnish reinstatement requirements satisfactory to the company and enclosed blanks therefor. This letter plaintiff

received, and on November 18, 1933, made out and forwarded to defendant company an application for reinstatement, in which she stated that said policy had lapsed for non-payment of premium and that she had thereby forfeited all claim under said policy. Satisfactory requirements were not furnished and defendant company declined to reinstate the policy, and on December 30, 1933, defendant company refunded plaintiff $3.12, the surp'us above the earned premium. Defendant assigns as error statutory grounds for new trial, error in refusing defendant a peremptory instruction, and error in refusing to determine and apply the proper measure of damages, and briefs same. Plaintiff in her brief contends that she thought the extension agreement was due November 4, 1933, and thought same was a note instead of an extension agreement, and that the measure of damages applied by the court was proper, or, at least, the amount of damages was not excessive.

The question in this case is whether the insurance policy was in force on November 2d when the September premium of $10.32 and 6 cents interest, evidenced by the extension agreement note, due November 1st, was mailed by the assured to the company, and whether the company waived prompt payment. The answer to this question depends: (1) on whether, by reason of the provisions of the policy and the note, default in payment of the note when due would forfeit the policy, i. e., whether time was of the essence of the contract; (2) or whether the policy on said date had a reserve credit to extend the insurance; and (3) whether the taking of the note, or the deducting of the earned premium to November 1, 1933, out of the $10.38 received by the company on November 4, 1933, waived the provisions of the policy and the note requiring prompt payment of the note when due to avoid a forfeiture of the policy. We believe that under the facts in this case and the law applicable thereto, the policy had no reserve; the company did nothing to waive prompt payment of the note; that time was material and of the essence of the contract; and that the answer should be that the policy was not in force on November 2d, and was not thereafter revived.

The old policy which was exchanged for the policy involved herein carried no reserve. The policy herein, effective March 1, 1931, was issued as of June 1, 1918 and had it actually been issued on that date and all premiums actually paid from that date, the reserve that would have accumulated on the policy would have amounted to $329.78 on

March 1, 1931. As this reserve had not as a matter of fact accumulated and did not exist, the certificate of loan executed by plaintiff on March 1, 1931, for $329.78, with interest, and amounting to $382.54 on November 1, 1933, represented the same. According to the Table of Values on the policy, the policy, on November 1, 1933, had a cash or loan value, or excess of reserve applicable to paid-up or extended insurance of $354, conditioned on the payment to the company of the amount of the loan certificate, $382.54. It is clear in our mind that the policy had no reserve credit on that date to apply on extended or paid-up insurance.

Plaintiff, however, does not contend that she was entitled to extended insurance by reason of the reserve, but urges that defendant company waived its right to require prompt payment of the note by taking the note in payment of the premium, and by retaining out of the moneys it received on November 4th the earned premium on the policy to November 4, 1933, and by leading plaintiff to believe that the note fell due on November 4, 1933. We have carefully read all the testimony of plaintiff, and in fact searched the record, but fail to find where the defendant company, by either negative or affirmative act, waived prompt payment of the extension note, or did anything other than to at all times insist upon the prompt payment of the note when due. Plaintiff offered no evidence to excuse her failure to pay the note on its due date, or to cast the blame for such failure upon defendant company. She did not testify that the defendant company did anything to waive prompt payment, or that she thought the extension note fell due on November 4th, or that defendant thought so or induced her to think so. She did write defendant company on December 6, 1933, in which letter she stated that she was supposed to receive a small pension on the 1st of each month, but that it did not always arrive and that was why she did not send the premium on November 1st, and, further that her "note was supposed to be till the 4th of Nov. Was not treated right by local office as I called and office girl told me it was made for Nov. 4 I called in Oct. so I was thinking I was in time." This letter is the only suggestion in the entire record tending to show that plaintiff was induced by defendant company to believe November 4th was the due date of the note, and it is not contended that the office girl had authority to act in such matter. The letter was not introduced by plaintiff and she did not testify that the office girl told her, or that she

thought, the note was due November 4th. The first words of the extension note were: "On or before November 1, 1933, after date without grace and without demand I promise to pay. * * *" Three letters were written by the defendant company· warning her that November 1st was the due date of the note, and that failure to pay same on that date would forfeit the policy. There was no testimony to sustain a reformation of the extension note and agreement so that same would become due as of November 4, 1933. had such a reformation been sought, and no testimony to sustain a rescission or cancellation of the note and agreement had that been sought; and a rescission of the·note and agreement would have effected a forfeiture of the policy as of October 2, 1933. However, this was not a suit to reform or rescind the note and agreement, but was an action for damages for wrongfully forfeiting the policy while it was in full force and effect. In her application for reinstatement plaintiff stated that· she had forfeited all claim under the policy, and that same had lapsed for nonpayment of the premium.

In no act did the defendant company waive prompt payment of the extension note unless by retaining $7.20, the earned premium to November 1st, out of the moneys received by it on November 4th, the defendant company as a matter of law waived same. We do not believe this constituted a waiver. However, plaintiff earnestly contends that the acceptance of the extension note and, agreement by defendant company was payment of the September quarterly premium in full, and carried the policy in full force until December 1st, although· the note recited that it was not given or accepted in payment of said premium. Plaintiff further contends that the retention of $7.20 by the defendant company constituted either a waiver of prompt payment of said note or a revival of the policy, and makes calculation in her brief to show that the premium on the policy was 11 and .34 cents a day and that $7.20 was 28 cents in excess of the premium to November 1st. Under this calculation it would take 23 cents less a fraction to carry the policy from November 1st to and including November 3rd, leaving only 5 cents to apply on the premium for November 4th. If this were material we would be compelled to ascertain the exact hour and minute to which the premium was thereby paid and at which the $10.38 money order was received by the defendant company to determine whether the company when the policy became forfeited had accepted payment of premium past the minute of forfeiture. But

as we view it this is immaterial. Defendant company's evidence was that $7.20 was the exact amount of earned premium to and including November 1st, and plaintiff offered no evidence to the contrary. The policy did not lapse on November 4th, but if it lapsed at all and became forfeited, it did so automatically on November 1st for failure to pay the extension note when it fell due, and plaintiff was then indebted to defendant company for the earned premium from September 1st to and including November 1st; and when the defendant company on November 4th received payment of the amount of the note, it thereby became indebted to plaintiff for that part of said amount in excess of such earned premium plus 6 cents interest, and still is indebted in the amount of such excess, if any, over and above the $3.12 refunded to plaintiff on December 30th. The letter of November 4th by defendant company to plaintiff was not, in our opinion, the cancellation or forfeiture of the policy, but information that same had lapsed and become forfeited on November 1st for failure to pay the note.

In support of her contention plaintiff cites the case of Kansas City Life Ins. Co. v. Hislip, 154 Okla. 42, 6 P. (2d) 678, decided by this court on November 3, 1931. However, that case must be distinguished from the case at bar. In that case the first premium on the policy and for which the policy was issued was paid, part in cash and part by note maturing after one year, and the policy clearly acknowledged full payment of the first year's premium and provided that it should be incontestable after one year with no exception as to payment of said premium. The note for $115.89 was not paid when due. The contestable time had run and the company had issued the policy acknowledging receipt of the premium. There we held under those facts and conditions that the cash and note constituted payment in full of the first annual premium within the meaning of the provisions of the policy. We still think that is the law; but that law in our opinion has no application to the case at bar for the reason that here the policy provided that upon default in payment·of any premium, or note or interest thereon, the policy should be null and void, and the extension note agreement given for the September premium also provided that if payment was not made at maturity said policy should without notice or any affirmative act on the part of the company, be null and void and automatically cease to be a claim against the company, and further

provided that it was not given as a payment of said September premium.

Plaintiff also cited Great Southern Life Ins. Co. v. Brooks, 166 Okla. 123, 26 P. (2d) 430. In that case, during the grace period after default in payment of a premium, the assured mailed the company a check therefor, which was turned down by the bank and returned by the company to assured on July 21st. After the grace period had expired on July 26th, the husband of assured, on August 5th, mailed the company a bank draft for the amount of the premium, which was retained by the company until after the assured died on August 13th, and thereafter on August 27th, returned without being cashed. The controlling question there was whether the conduct on the part of the insurance company constituted a waiver of prompt payment of the premium. We held that it did not, but said: "It is to be noted also that the insurance company did not cash the draft, but temporarily held it and subsequently returned it to Mr. Marcum, who had sent it." We did not there state what our holding would have been had the company cashed the draft and retained the money, which would have paid the earned premiums on the policy far beyond the death of the assured. But that case must also be distinguished from the case at bar. In that case there was no liability on the part of the assured to pay the premiums on the policy, but she had the right or option either to pay the premiums as they became due or allow the policy to lapse. In Mutual Life Ins. Co. v. Chattanooga, Sav. Bank, 47 Okla. 748, 150 P. 190, we said:

"Clearly the annual premium due upon the policy of insurance is not a debt. It is not an obligation upon which the insurance company could maintain an action against the assured, and if it is not such an obligation, it is clearly not a debt. On the dishonor of the draft sent in payment of the premium, there could be no recovery 'upon the original indebtedness.' as the rule provides, for the reason that there is no original debt."

In the Brooks Case the assured owed the company nothing on August 5th when said bank draft was mailed to the company, either for the full premium due or the pro rata earned premium, nor did she or her husband owe the company said premium when she died on August 13th. She had signed no separate note or agreement becoming liable for the payment of said premium or any part thereof, and same was not a debt. In the case at bar the policy of insurance held by plaintiff incurred no liability on her to pay the premiums. It was her

option, right and privilege to either pay same within the period of grace or let the policy lapse. Prior to September 26, 1933, she owed the company nothing and the company could not have maintained an action against her for the September premium or any part thereof. To that date the two cases are similar in this respect, but there the similarity ceases, for on that date plaintiff executed the extension note agreement involved herein, which was accepted by defendant company and which not only provided that if the entire sum, $10.32 with interest, be not paid on or before November 1, 1933, the policy would cease and determine, but by which she obligated herself to pay the earned premium on the policy to November 1, 1933, in consideration of an extension of time of payment of the September quarterly premium. Following the promise to pay said sum of $10.32 and interest, said note contained the following provision:

"This premium extension agreement and accrued interest shall without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face, with interest, that the time the insurance has been continued by this premium extension agreement bears to the whole time covered by said premium."

As we view it, this debt provision in said agreement is valid and binding and created a debt in the amount of the earned premium to November 1, 1933, with interest, which the assured was obligated to pay and which the defendant could collect or recover in an action without waiving prompt payment of the note or reviving the policy, and defendant company was within its rights in deducting the earned premium to November 1, 1933, from the $10.38 received by it on November 4, 1933, and said act did not waive prompt payment of the note on November 1st or revive the policy.

The extension agreement involved herein is, in our opinion, a note, and we so hold. By it plaintiff promised to pay the entire quarterly premium with interest on or before November 1, 1933, to avoid a forfeiture of the policy, and agreed and bound herself to pay the earned premium and interest to said date without reviving the policy or any of its provisions. The vital question before us, then, is: Did the provision in the policy, "Upon default in payment of any premium, or any note or interest thereon, whether such note be given for the first or subsequent premium, this policy shall be null and void and all premiums forfeited to the company,"

and the provisions in the note, "I understand and hereby agree that if this premium extension agreement is not paid at maturity, said policy shall without notice or any affirmative act on the part of the company or any of its officers or agents, be null and void and the policy shall automatically cease to be a claim against the company," and "I understand and agree that neither this premium extension agreement, nor any extension thereof, is given or accepted as a payment of said premium," forfeit the policy when the note was not paid on due date? or did this note pay the premium on the policy to December 1, 1933? No authorities on this question are cited in the brief. However, the rule is as old as the law of insurance and followed by the Supreme Court of the United States, the federal courts, and most of the state courts, that payment of premiums when due is a condition subsequent, and where an insurance policy provides for a lapse or forfeiture of the policy for failure to promptly pay such premiums or a note given therefor, time is of the essence of the contract. Slocum v. New York Life Insurance Co., 228 U. S. 364, 57 L. Ed. 879; Security Mut. Life Ins. Co. v. Riley (Ala.) 47 So. 735; Wells v. Union Cent. Life Ins. Co. (Ark.) 98 S. W. 697; Madison v. Northwestern Mut. Life Ins. Co. (Cal.) 75 P. 113; Mutual Life Ins. Co. v. Clancy (Ga.) 36 S. E. 944; New Zealand Ins. Co. v. Maaz (Colo. App.) 59 P. 213; Roberts v. Aetna Life Ins. Co. (Ill.) 72 N. E. 363; Forbes v. Union Central Life Ins. Co. (Ind.) 51 N. E. 84; Beezley v. Des Moines Life Ass'n (Iowa) 69 N. W. 549; Richardson v. Mutual Life Ins. Co. (Ky. L. Rep.) 18 S. W. 165; Lesseps v. Fidelity Mut. Life Ins. Co. (La.) 45 So. 522; Ferguson v. Union Mut. Life Ins. Co. (Mass.) 72 N. E. 358; Grattan v. Prudential Ins. Co. (Minn.) 108 N. W. 821; Sewell v. Continental Casualty Co. (Miss.) 46 So. 714; Ashbrook v. Phoenix Mut. Life Ins. Co. (Mo.) 6 S. W. 462; Melvin v. Piedmont Mut. Life Ins. Co. (N. C.) 64 S. E. 180; Lamb & Co. v. Merchants Nat. Mut. Fire Ins. Co. (N. D.) 119 N. W. 1048; Baldwin v. Provident Sav. Life Assur. Society (N. Y.) 57 N. E. 1103; Seeley v. Union Cent. Life Ins. Co., 10 Pa. Super. Ct. 270; Monast v. Manhattan Life Ins. Co. (R. I.) 79 Atl. 932; Noem v. Equitable Life Ins. Co. (S. D.) 153 N. W. 652; Thompson v. Fidelity Mut. Life Ins. Co. (Tenn.) 92 S. W. 1098; Mutual Reserve Fund Life Ass'n v. Lovenberg (Tex. Civ. App.) 59 S. W. 314; Nixon v. Travelers Ins. Co. (Wash.) 65 P. 195; Abell v. Penn Mut. Life Ins. Co., 18 W. Va. 400; Behling v. Northwestern Nat. Life Ins. Co. (Wis.) 93 N. W. 800.

In Slocum v. New York Life Insurance Co., supra, the Supreme Court of the United States held that where a life insurance policy provided for payment of premiums within a specified period of grace and if not so paid the liability of the company thereon should terminate, and where there was no reserve credit on the policy for a continuance of the insurance after the premium became due, the policy lapsed for nonpayment of a premium within the period of grace, even though a partial payment on such premium had been made to and accepted by an unauthorized agent of the insurance company sufficient to carry the policy beyond the date of death of assured, and said:

"The Circuit Court of Appeals (177 F. 842) was of opinion that the evidence conclusively established that there was no excess of reserve on the policy applicable to a continuance of the insurance after the premium of November 27, 1907, fell due, and we fully concur in that conclusion. * * * The policy plainly provided for the payment of the stipulated premium annually within the month of grace following the due day, and as plainly excluded any idea that payment could be made in installments distributed through the year. Concededly. there was no payment of the whole of the premium in question, and as a partial payment was not within the contemplation of the policy, nothing was gained by handing to the agent the check for $264.20, unless what he did in that connection operated as a waiver of full and timely payment."

In Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 47 L. Ed. 204, the Supreme Court of the United States had before it a life insurance policy which did not provide that if a note be given for a premium thereon and same be not paid at maturity the policy should cease and determine, but where a note taken for a premium thereon did contain such provision and was not paid when due, and the court there held that the failure to pay the note when due voided the policy the same as though said provision had been in the policy itself, and that no affirmative action on the part of the insurance company was necessary to cancel the policy, and said:

"In our other decisions, which we have cited, it was held that time is the essence of the contract, and nonpayment at the day involves absolute forfeiture. In none of the cases was there any affirmative action by the company. Forfeiture occurred from nonpayment."

570

The "our other decisions" there referred to were Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234, New York Life Insurance Co. v. Statham et al., 93 U. S. 24, and Klein v. N. Y. Life Insurance Co., 104 U. S. 88. Referring to the Norton Case, the court there said:

"All of the papers, therefore, embodied the agreement of the parties. In Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234, the agreement was considered as 'embodied in the policy and the endorsements thereon, as well as in the notes and the receipt given therefor.' * * * The latter case is an important one. The policy provided that not only a failure to pay any premium, but 'the failure to pay at maturity any note, obligation or indebtedness (other than the annual credit or loan) for premium or interest due under said policy or contract, shall then and thereafter cause said policy to be void without notice to any party or parties interested therein.' The court not only asserted the doctrine of strict punctuality of payment ad diem, but applied the rule to a note for part payment."

Referring to the New York Life Insurance Company Case, the court said:

"In New York Life Insurance Company v. Statham et al., 93 U. S. 24, Mr. Justice Bradley, delivering the opinion of the court, said: 'Promptness of payment is essential in the business of life insurance. * * * Delinquency cannot be tolerated nor redeemed, except at the option of the company. * * * Time is material and of the essence of the contract. Nonpayment at the day involves absolute forfeiture, if such be the terms of the contract. * * * Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence.'"

The court stated that the New York Life Insurance Company Case was followed in Thompson v. Insurance Co., 104 U. S. 252, and in Klein v. Insurance Co., 104 U. S. 88, and referring to the Klein Case the court said:

"In Klein v. Insurance Co. it was said: 'If the assured can neglect payment at maturity and yet suffer no loss or forfeiture, premiums will not be punctually paid. The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture they are deprived of the means which they have reserved by their contract of compelling the parties insured to meet their engagements. The provision, therefore, for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the assured in making punctual payment of the premiums, is to destroy the very substance of the contract.'"

It is the rule in some states that some affirmative action or notice by the insurance company is required to forfeit a life insurance policy after default in payment of a premium or note given therefor, and that the nonpayment of a note given for a premium does not forfeit the policy unless the policy so provides. Referring to this rule the court, in the Iowa Life Insurance Co. Case said:

"It has been held in cases in the state courts as in Mutual Life Insurance Co. v. French [30 Ohio St. 240, 27 Am. Rep. 443] that no forfeiture is incurred until notice by the company has been given that it is claimed. And other cases hold that when the condition of forfeiture is in the note only, the mere fact of nonpayment at maturity does not of itself avoid the policy. A review of the cases we do not consider necessary. We prefer to follow our own decisions."

In the case at bar the note itself, as well as the policy, provided for a forfeiture of the policy if the note was not paid when due.

From the case of Friend v. Southern States Life Ins. Co., 58 Okla. 448, 160 P. 457, to the present time we have consistently followed the majority rule as announced by the Supreme Court of the United States. Great Southern Life Ins. Co. v. Brooks, 166 Okla. 123, 26 P. (2d) 430, was a suit on a life insurance policy which provided that it should cease if any premium or note given therefor should not be paid when due, and, allowed a grace period of 30 days for payment. A premium became due June 26th and the grace period expired July 26th. The premium was paid by check within the grace period on July 12th, and the company in its receipt therefor stated that the amount specified therein must be actually paid, otherwise, the receipt to be null and void. The check was not paid when presented and the company so notified the assured by letter on July 21st, returning therewith the check, and requested that the unpaid item be taken care of promptly. After the grace period had expired the company wrote the assured on August 1st that on account of the delay it would be necessary for assured to furnish evidence of insurability before a reinstatement could be effected, and on August 5th the husband of assured mailed the company a bank draft

for the amount of the premium, which was by the company returned on August 27th, after the death of assured. We there held that the policy lapsed and became forfeited on July 26th for failure to pay the premium, and there said:

"The controlling question is whether or not these letters and this conduct on the part of the insurance company constituted a waiver of the contract provisions requiring prompt payment of the premium to avoid cessation and lapse of the policy on July 26th.

"We regard the law as well settled that such provisions in an insurance policy are for the benefit of the insurer and may be waived by the insurer. National Life Insurance Co. v. Clayton, 70 Okla. 116, 173 P. 356; Bankers Reserve Life Insurance Co. v. Rice, 99 Okla. 184, 226 P. 324; Pacific Mutual Life Insurance Co. v. McDowell, 42 Okla. 300, 141 P. 273; Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 P. 82; St. Paul Fire & Marine Insurance Co. v. Cooper, 25 Okla. 38, 105 P. 198. And likewise that such waiver may be shown by a course of action on the part of insured which treats the policy as a valid and subsisting policy which the insurer could have declared forfeited because of a breach or nonpayment. National Life Insurance Co. v. Clayton, supra; Sovereign Camp W. O. W. v. Tam, 90 Okla. 196, 216 P. 660. And likewise that the insurer may by a course of conduct be estopped from asserting cessation or lapse of a policy for nonprompt payment where there was a course of action or custom to accept payments out of time, as in the case of Pacific Mutual Life Insurance Co. v. McDowell, 42 Okla. 300, 141 P. 273; Knights of the Maccabees of the World v. Johnson, supra.

"However, it is quite generally held that the provisions of an insurance policy requiring prompt payment of the premiums, and the provisions for lapse or cessation of the policy for nonprompt payment, are valid, essential, and enforceable provisions of the contract (Klein v. New York Life Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Insurance Company v. Statham, 93 U. S. 24; Bankers Reserve Life Ins. Co. v. Rice, supra); and that the insurer cannot be denied the benefits of such wholesome provisions of the policy, unless the insurer has voluntarily waived the same, or is held to have waived the same by some act indicating an intention not to act and rely upon the lapse or cessation, or has proceeded or acted in a way or manner wholly inconsistent with the enforcement of the provisions for lapse or cessation for nonprompt payment. No authorities are cited which are contrary to these announced rules."

In holding that the earned premium on the policy to November 1, 1933, was a debt created by the extension agreement note, which the defendant company was entitled to deduct from the $10.38 thereafter received without reviving the policy or waiving prompt payment of note in full, and that time was of the essence of the policy and extension agreement note, and that the policy lapsed and ceased to be a binding obligation of the defendant company on November 1, 1933 for failure to pay said note when due, and that said policy was not thereafter revived or prompt payment of the note waived, we are not only in harmony with the majority rule, but are also in keeping with the last word of this court on the question; in fact, we could not hold otherwise without squarely overruling the case of National Fidelity Life Ins. Co. v. Stroud, 171 Okla. 247, 42 P. (2d) 893.

Both the Stroud Case and the case at bar involve extension agreement notes extending the time for the payment of premiums on life insurance policies and given during the grace period. Neither note was paid when due. In both notes the assured agreed and bound himself to pay, in any event, the proportionate part of the premium covering the extension granted, with interest. Both notes provided that a sum of money should be deposited with the company with the note, to be retained by the company on nonpayment of the note. Both notes were in the amount of the extended premium and provided that the policy would lapse if the note be not paid when due. However in the case at bar, no money was actually deposited with the company and the provision therefor in the note was filled in "no-Dollars" and the premium earned to the maturity of the note was retained by the company out of the money received by the company after the policy had been forfeited for nonpayment of the note; while in the Stroud Case $7 was deposited with the company, which was more than the earned premium to the due date of the note, and same was retained by the company.

The contentions of the parties on appeal were summed up in the Stroud Case as follows:

"It is the contention of plaintiff in error that when the annual premium was not paid when it fell due on May 5th, or within the 30-day grace period thereafter, the policy lapsed except in so far as it was kept in force by the 'extension agreement,' and that the extension agreement became the contract between it and the insured, and that the said extension contract measured the rights of the insured and defined the liabilities of the insurance company. On the other hand, it

is contended by the beneficiary under the policy that the $7 payment, when deposited with the insurance company, extended the same and kept it in force for a period of time in proportion to the full quarter that the $7 payment bears to the $16.06, the amount required to pay the full quarterly premium, or until September 6th, and that a full quarterly premium having been tendered before that time expired and held by the insurance company, the policy never lapsed, but was in force on September 20th, when the insured died."

Mr. Justice Phelps, who wrote the opinion, then cited Kansas City Life Insurance Co. v. Leedy, 62 Okla. 131, 162 P. 760, holding that a tender of the full amount of an extension agreement note extending time of payment of premium after the note fell due was made too late as the policy lapsed with the nonpayment of the note, and quoted from Kroksather v. Western Union Life Ins. Co. (N. D.) 193 N. W. 48, where it is held that if a policyholder takes the benefit of the delay or extension contracted for in a separate agreement, he is bound to perform the conditions on which it is granted, or submit to the consequences of the failure to so perform, and said:

"In the instant case, when the insured tendered the $7 to the insurance company he said: 'That no portion of said premium has been paid and that the remittance herewith made you shall be held by you until the end of the extension period, to be then subject to my order if I comply with the provisions hereof, but to be retained by you in the event of my failure to do so.'

"He further said: 'That if said premium and interest be not paid on said date (August 5, 1931) I shall immediately pay you * * * the proportionate part of said premium covering the extension granted, and said policy shall be forfeited and void. * * *'

"It is difficult to imagine a case where the language is plainer or the intention of the parties, but simply construe them for the stance, the insured said: You take this $7 and give me three months time to pay the balance of the annual premium. If I do not pay it within that time, you keep the $7 and I agree that said policy shall be forfeited and void.

"In Brown v. Connecticut Fire Insurance Co., 52 Okla. 392, 153 P. 173, this court said: 'Courts do not make such contracts for the parties, but simply construe them for the parties when called upon to do so, and that in so doing the courts look to the plain import of the language used.'

"And part of the third paragraph of the syllabus reads as follows: 'A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself'

"Applying this rule to the extension contract under consideration, there is but one conclusion that can be reached."

As we view the case, the motion of defendant company for a directed verdict should have been sustained by the trial court, and so holding, it is unnecessary for us to determine the value of the policy when forfeited.

After reviewing the whole record and discussion and authorities cited, we must conclude that the policy of insurance involved herein lapsed and ceased as an obligation of defendant company for want of payment of the extension agreement note when it became due on November 1, 1933.

The judgment is, therefore, reversed and the case dismissed.

The Supreme Court acknowledges the aid of Attorneys Edgar M. Lee, Gerald Klein, and Felix M. Landa in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lee and approved by Mr. Klein and Mr. Landa, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.