## OLD SURETY LIFE INSURANCE CO. v. MORROW.

No. 31125. May 16, 1944.

Rehearing Denied May 22, 1945.

*158 P. 2d 715.*

Otjen & Carter, of Enid, for plaintiff in error.

M. F. Priebe and W. E. Crowe, both of Enid, for defendant in error.

Paul F. Showalter, George F. Short, Welcome D. Pierson, George E. Fisher, and John F. Reed, all of Oklahoma City, amici curiae.

GIBSON, V. C. J. This is an action to recover on a policy of life insurance. Judgment was for plaintiff, and defendant appeals.

The defendant insurance company was organized pursuant to 36 O. S. 1941, ch. 14 (§§ 651-667), as an industrial, life, health and accident insurer for the purpose, as stated in the act, of making insurance on the lives of individuals on the industrial weekly payment plan, with a stipulated premium as defined in the act, and with authority to indemnify against death or disability of the insured occasioned by sickness or accident (sec. 651, supra).

With certain exceptions not material here, section 654 of said chapter 14 would make all companies complying with the act subject only to the provisions thereof, thus relieving them from the operation of the general insurance laws of the state.

In June, 1937, defendant issued a policy on the life of James A. Morrow, with the plaintiff named therein as beneficiary. The face of the policy was $2,500, and the stipulated monthly premiums $14.95, payable on the 21st day of each month. Premiums were regularly paid for a period of approximately four years, or up to and including the one due April 21, 1941. Morrow died June 25, 1941, without having paid the premium due May 21, 1941, as a result of which the policy lapsed according to the express terms thereof, and defendant refused payment on that ground.

Plaintiff sought recovery on the theory that the insurance contract, though issued by a company organized pursuant to the special act, supra, and purportedly exempt from the general insurance laws, was nevertheless subject to those laws for the reason that it constituted an ultra vires contract, bearing all the distinctive characteristics of an old line policy. It is insisted that said policy for that reason carried with it as a part thereof all the statutes relating to life insurance in general, and especially 36 O. S. 1941 § 218, par. 8, which would prohibit total forfeiture of the ordinary policy for default in premium payments, and require a form of extended coverage of a premium value to be based on the reserve credited to the policy together with any dividends thereon.

Plaintiff insists that the provisions of the policy, not the statutory powers of the company issuing it, govern the character thereof, whether it is a so-called old line policy or one issued on the stipulated premium plan as defined in the act aforesaid. Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917; Supreme Forest Woodman Circle v. Bowen, 180 Okla. 534, 71 P. 2d 480.

On the other hand, defendant says that the policy was issued pursuant to and within the powers granted by the special act aforesaid, and that the provision in the policy declaring a forfeiture for nonpayment of premiums was valid and binding. Great Southern Life Ins. Co. v. Brooks, 166 Okla. 123, 26 P. 2d 430.

The above contentions define the issue. If the policy was not ultra vires, but was issued in conformity with the special act, above, the plaintiff cannot recover.

The sections of the statute mainly controlling of that issue are 651 and 654, supra. Section 651 reads as follows:

"Any number of persons, not less than five, a majority of whom being citizens and residents of the State of Oklahoma, may associate themselves and form a company, for the purpose of making insurance on the lives of individuals, on the industrial weekly payment plan, with a stipulated premium, as defined and regulated herein, and may provide for indemnity against death or disability of the insured occasioned by sickness or accident."

And section 654, so far as material here, reads as follows:

"Any corporation, company or association issuing policies or certificates promising money or other benefits to a member or policyholder, or, upon his decease, to his legal representatives, or to beneficiaries designated by him, which money or benefit is derived from stipulated premiums collected in advance from its members or policyholders, and from interest and other accumulations, and wherein the money or other benefits so realized is applied to or accumulated solely for the use and purposes of the corporation as herein specified, and for the necessary expenses of the corporation, and the prosecution and enlargement of its business and which shall comply with all the provisions of this Article, shall be deemed to be engaged in the business of life, health and accident insurance upon the stipulated premium plan and shall be subject only to the provisions of this Article."

The evidence on which rests the assertion that the policy was ultra vires and of the old line variety is that the application therefor states that the insurance applied for was "ordinary life"; that the policy on the front thereof stated that the defendant company was a "Legal Reserve" company; and that the premiums, instead of being made payable "on the industrial weekly payment plan" as mentioned in section 651, supra, were made payable monthly.

Plaintiff insists that the defendant in placing the above indorsements on the policy was attempting to comply with that portion of section 218, supra (par. 13), which requires that "The title on the face and on the back of the policy shall correctly describe the same." As a result, says plaintiff, the policy was definitely classified as a "legal reserve"

and an "ordinary life" policy, and, in being so branded, it became an old line policy and, as such, subject to the general insurance laws which, among other things, require extended insurance, after default in premiums, the value thereof to be based on the reserve value.

Numerous authorities are cited to the effect that indorsements on an insurance policy may become a part of the contract. We do not disagree with that statement. But plaintiff fails to call our attention to any authority holding that indorsements such as those in question were sufficient to mark the policy as belonging to the old line variety and controlled by the general statutes.

Defendant says that it is a legal reserve company, and that the policy was one of ordinary life. In this connection it is insisted that the special act authorized a legal reserve, and permitted the issuance of ordinary life policies free from the application of the requirements of the general statutes aforesaid.

The title of the special act is, "An Act providing for the organization of Industrial, Life, Health and Accident Insurance companies on the stipulated premium plan," etc. (ch. 60, p. 113, S. L. 1923). That title clearly contemplates the provisions of the act whereby companies organized pursuant thereto were authorized to issue life insurance policies. We see nothing amiss in defining such policies as ordinary life insurance. That designation merely serves to classify them as policies with continuing premiums, and payable upon the death of the insured and to distinguish them from endowment policies and others with premiums limited as to time. The statute clearly authorized the defendant to issue an ordinary life policy.

The term "legal reserve" appearing on the policy was no indication that it was an old line policy, or outside the authority granted defendant by the statute. Section 653 requires such companies to maintain a reserve of $10,000 with the State Treasurer for the protection of policyholders. And "legal reserve" constitutes the portion of the assets of a life insurance company which is required to be set aside to meet liabilities on its policies. Ramer v. Reserve Loan Life Ins. Co., 213 Ill. App. 164. The defendant actually had a legal reserve, and by authority of the law under which it operated.

. Here, the defendant promised by the policy to pay a certain sum on the insured's death ·to his beneficiary. The record shows that the only funds from which that sum could be paid were to be "derived from stipulated premiums collected in advance from its . . . policyholders, and from interest and other accumulations," and it is further shown that the premiums and accumulations so realized were applied as provided by section 654, all of which leads to the conclusion that the defendant when it issued the policy was "engaged in the business of life, health and accident insurance upon the stipulated premium plan," and was therefore subject only to the provisions of the act (sec. 654).

However, there remains the contention that defendant is not protected from the general statutes for the reason that the premiums were not made payable on the industrial weekly payment plan as allegedly required by the statute, but on the monthly plan (sec. 651).

The title of the act, supra, clearly refers to industrial insurance as well as to life, health and accident. The comma following the word "industrial" clearly reveals the intention to legislate with respect to industrial insurance as a class. Section 1 of the act (sec. 651) authorizes the organization of companies "for the purpose of making insurance on the lives of individuals, on the industrial weekly payment plan, with a stipulated premium, as defined and regulated herein . . ." Defendant believes the intention of that provision was to authorize two classes of policies, one on the industrial weekly payment plan, the other on the stipulated premium plan as "defined and regulated" in section 654, and which does not purport to limit the premium payment periods.

We agree with counsel at least to the extent that the statute authorized both industrial life policies and ordinary life policies. The act, especially section 651, when construed along with the title, clearly reveals such a purpose. Each type, however, was to carry a stipulated premium as defined and regulated in section 654.

The term "stipulated premium" as used in the act has particular reference, not to the amount of the premiums and time for payment thereof, but to the method and manner of paying the benefits accruing under the policies and defined in section 654 as the "stipulated premium plan." The stipulated premium plan of insurance as defined in that section constitutes the principal mark of distinction of those companies operating under and pursuant to the act in question. If they are organized under the act and operate according to that plan they "shall be deemed to be engaged in the business of life, health and accident insurance . . . and shall be subject only to the provisions of this article . . ." Said section 654 makes it unlawful for any company not complying with the act to hold itself out as operating under the stipulated premium plan. But companies complying with the act are not required to disclose that fact in their insurance contracts.

Weekly payment plan of industrial insurance is permitted by the act, but is not made the exclusive kind that may be issued thereunder. Such insurance has no clearly defined meaning. It has been referred to as a plan of insurance under which small policies of accident, health or life insurance are issued on weekly or monthly premium payments. 31 C. J. 966. This court has said with reference thereto:

"From an examination of numerous authorities on the question, it seems that 'industrial insurance' in a general sense means policies issued in small amounts in consideration of weekly payments as distinguished from ordinary insurance, which is usually in large amounts and maintained by annual, semiannual, or quarterly premiums."

Prudential Ins. Co. of America v. Howell, 144 Okla. 166, 289 P. 734.

Here, the statute made no attempt to define industrial insurance except to authorize the weekly payment plan. There is no limit placed upon the indemnity to the individual or upon the premium to be paid. The general definition of industrial insurance remains too indefinite and uncertain to warrant a holding here that the Legislature intends to limit the policies to small amounts on a weekly premium basis "to provide a means whereby the laboring and more unfortunate classes may be able to carry small amounts of insurance upon the payment of a small proportion of weekly wages or earnings to meet such exigencies as may and usually arise in case of death," which was said in the last cited case to be "the underlying principle of such insurance."

Had the Legislature intended to limit the policies to that type of insurance, it could have easily so provided. The statute authorized industrial, and life, and accident and health insurance, conducted on a "stipulated premium plan" as defined therein. There is no limitation upon the indemnity, and there is no limitation on the amount of premium. The only limitation, if such it actually is, falls upon the period for paying premiums, and that is confined wholly to industrial insurance, whatever that may be.

The defendant company was organized for the purpose of conducting the business of industrial, life, health and accident insurance on the stipulated premium plan, as authorized by the statute. The record discloses that the policy here in question was issued strictly according to that plan. The privileges of that plan are open to any insurance company that may desire to conform therewith (sec. 660).

Plaintiff relies mainly on Modern Order of Praetorians v. Bloom, supra, to support her argument that the insurance contract itself fixes the obligation of the insurer regardless of the authority of the insurer to execute the con-

tract. In Supreme Forest Woodmen Circle v. Bowen, supra, when referring to the Bloom Case, we said:

"That decision, however, so far as the particular question here discussed is concerned, stands for but one proposition, namely, that where a fraternal insurance order by ultra vires act obligates itself upon contract, it may not invoke the exemption statutes of this state pertaining to fraternal orders in an action against it upon such contract. Other statements of the court pertaining to that question and not necessary to that conclusion were merely dicta. There the policy sued upon was one not authorized by the constitutional and statutory provisions pertaining to such associations. In issuing that policy the defendant in that case was not acting as a fraternal order within the statutory and constitutional definitions of that term."

Unlike the policy in the Bloom Case, the one here involved was not ultra vires, but was issued strictly within the plan authorized by law and the corporate charter. The policy may not have indicated on its face that the company was organized and operating under the stipulated premium plan, but the law does not require such disclosure.

Provisions in a policy of life insurance that the same shall lapse for failure to pay the premiums on the due date are valid contractual requirements and may be relied on by the insurer and enforced as a defense, unless estoppel or waiver intervenes. Great Southern Life Ins. Co. v. Brooks, supra.

Here, there was no allegation of waiver; and the estoppel feature was nonexistent. Had the policy been issued in violation of the special act, the general laws relating to extended insurance (sec. 218, supra) might have intervened to estop defendant from relying on the clause that would lapse the policy for failure to pay the premium.

The statute requiring the insertion of a provision for extended insurance is wholly of legislative origin and was intended for the protection of holders of life policies in general. The Legislature may do away with that requirement entirely, or it may establish a class of insurance to which the provision shall not apply. So long as the classification in that respect is real and substantial, we can think of no constitutional inhibition against such enactments.

The judgment is reversed and the cause remanded, with directions to enter judgment for defendant.

CORN, C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., dissents.