Alvah Henry WELLS, Plaintiff in Error,

v.

FRANKLIN CASUALTY INSURANCE COMPANY, Defendant in Error.

No. 39392.

Supreme Court of Oklahoma.

March 12, 1963.

Rehearing Denied April 9, 1963.

Houston, Klein & Davidson, Edward L. Jacoby, Thomas M. Hanna, Tulsa, for plaintiff in error.

Alfred B. Knight, Tulsa, for defendant in error.

IRWIN, Justice.

Alvah Henry Wells obtained a judgment against Paul W. Hamilton, Sr., for the death of his wife, Grace Wells, based upon an automobile collision occurring March 10, 1958. The judgment not being paid an execution was issued against the judgment debtor which was returned unsatisfied and endorsed, "no property found". Thereafter, Alvah Henry Wells commenced garnishment proceedings against Franklin Casualty Insurance Company on the theory the Franklin Casualty Insurance Company has issued a liability insurance policy to Paul W. Hamilton, Sr., and was therefore liable to Hamilton for the amount of the judgment.

In answer to interrogatories, the insurance company admitted it issued a policy of insurance to Hamilton on August 27, 1957, but asserted the same expired by its own terms on February 27, 1958. Alvah Henry Wells elected to take issue with the answer to the interrogatories, and after trial by jury was waived, the trial court proceeded to hear the evidence of both parties and found against Alvah Henry Wells and in favor of the insurance company and entered judgment absolving the insurance company. From this action of the court Alvah Henry Wells perfected his appeal. Alvah Henry Wells will be referred to as plaintiff or by name and the Franklin Casualty Insurance Company will be referred to as defendant or as insurance company.

The contract of insurance provides for coverage from August 27, 1957 to August 27, 1958. Attached to the policy is the following endorsement:

"INSTALLMENT PAYMENT—ENDORSEMENT A–

Endorsement No._____

Effective from August 27th, 1957 Amending Policy
No. AAC33230_____

Issued to PAUL W. HAMILTON

Subject to the terms, conditions and agreements of the above numbered policy, it is agreed:

That the policy is issued upon the payment of $17.50 on the effective date, and that a second payment of $17.50 will be due and payable on or before February 27th, 1958.

IT IS FURTHER AGREED THAT: An endorsement stating the second payment has been made must be attached to the policy on or before February 27th, 1958, or the policy will lapse.

SEARCY–LANCASTER AGENCY FRANKLIN CASUALTY INSUR-
BY:_____ ANCE CO.
 Authorized Representative BEN FRANKLIN
 President"

With reference to cancellation by the company, the policy by Section 24, contains the following:

"* * * This policy may be cancelled by the company by mailing to the insured at the address shown in policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing."

The policy of insurance was issued by Euel Lancaster, surviving member of the Searcy-Lancaster Agency on August 27, 1957. Lancaster had authority to issue and countersign policies of insurance.

The evidence shows that at the time of issuance, the first six months premium was not paid but was shown on the books of the issuing agency as a debt due and owing by Hamilton. The premium due February 27, 1958, was not paid on or before that date but the premium was paid March 27, 1958, which was after the accident. It was admitted no notice of cancellation was given to the insured by the insurance company or its issuing agency.

Wells contends the policy was issued for a period of one year and the endorsement did not change or alter the stated period of coverage but merely prescribed how payment was to be made; that it was necessary that insurer give notice of cancellation in conformity with the express provisions of the contract; and, that credit was extended to the insured and the policy was in full force and effect when the accident occurred.

The insurance company contends the Endorsement of Payment controlled the provisions of the policy and supersedes anything in the policy to the contrary; that the insurance policy lapsed by its own terms and notice of cancellation was not necessary; and, that the question of extension of credit to the insured was resolved against Wells by the trier of facts (the trial court) and such judgment should not be reversed if there is any evidence supporting it.

We will consider first whether the insurance policy was in full force and effect when the accident occurred by reason of extension of credit to the insured.

During the trial it developed that the insurance company had started issuing policies to Hamilton in 1954, and the following transactions were had between the insured and the issuing agency.

1. An automobile insurance policy No. AAC19858 was issued to Paul W. Hamilton, for coverage from August 27, 1954 to August 27, 1955. This policy contained a rider that the same would lapse unless the endorsement was attached showing payment of the second installment on or before February 27, 1955. The premium to the first six months was charged to Hamilton's account and this was paid some four months later, on December 2, 1954. The premium due February 27, 1955, was charged to Hamilton's account and the same was paid nearly one year later, on February 8, 1956.

If credit was not extended to the insured under this policy, the insurance policy was in force and effect only from December 2, 1954, to February 27, 1955. However, the insured paid premium for the entire year.

2. On August 27, 1955, policy No. AAC24561 for coverage from August 27, 1955 to August 27, 1956, was issued to Hamilton. This policy was a renewal of policy No. AAC19858. Hamilton's account with Searcy-Lancaster Agency was debited and was paid on February 11, 1956.

If credit was not extended under this renewal policy, the policy was in force only from February 11, 1956, to August 27, 1956, even though premiums were paid for the entire year.

3. Policy No. 29607, for coverage from August 27, 1956 to August 27, 1957, was a renewal of policy No. 24561. The premium was charged to Hamilton's account. The premium due August 27, 1956 was paid May 16, 1957, and the premium due February 27, 1957, was also paid on May 16, 1957.

If credit was not extended in this instance, the policy was in force only from May 16, 1957, to August 27, 1957, even though premiums were paid for the entire year.

4. The policy under consideration is policy No. 33230, which was a renewal of policy No. 29607. The premium was charged to Hamilton's account and was paid later.

This policy was mailed to Hamilton on July 19, 1957, and in the letter of transmittal the agent stated:

"We are enclosing herewith policy No. AAC33230
* * * for a term of one year.
Premium --------------------------------$35.00 payable $17.50 8/27/57
and $17.50 2/27/58
This is a renewal of your present policy of like amount and terms and is mailed to you in keeping with our practice of never letting our customer's protection lapse * * *."

Mr. Lancaster, on cross-examination stated that when he issued a policy to the insured he would put it on the ledger sheet as an owing item and that "I put it on his ledger account showing that we had charged him or issued a policy and he owed the premium." The following testimony was also introduced:

"Question: All right, do you have authority to issue the policy Mr. Lancaster, without receipt of the premium?

"Answer: Yes sir.

"Question: And that's what you did in this case, is it not, sir?

"Answer: Yes.

"Question: And isn't it a fact that that had been your practice with Mr. Hamilton in prior years to issue the policy without receiving from him the money for the premium?

"Answer: That is correct."

In addition to the testimony of Lancaster, as to granting credit to Hamilton, and the ledger sheet showing credit was actually extended, we find the operating agreement between the insurance company and the Lancaster agency provides in Sec. 3, as follows:

"On premiums produced by audits of policies, the Agent agrees to bill the assured and include in his account current for that month audit premiums when furnished by the Company, and collect same promptly. The Agent may, within thirty days following the close of the month in which such audit premiums are furnished, turn the same back to the Accounting Department of the Company for collection direct; in such event relinquishing his commission. If the Agent fails to turn such audit premiums back to the Company for collection direct, within the time so specified, he agrees to pay the Company therefor, whether collected or not."

The endorsement provision stating that the payment had been made or the policy would lapse was not a change of policy of the insurance company for all the policies issued to the insured contained the same endorsement provision. The agent of the insurance company, who had authority to issue and countersign policies, in his letter of transmittal to the insured on July 19, 1957, did not indicate that the company had changed its policy with reference to pay-

ment or that he, as its agent, would not continue the insurance business relationship with the insured on the same basis as it had been conducted before. To the contrary, the agent mailed the insured a new policy and charged the premium to the insured's account, as had been his practice in prior years, "in keeping with our practice of never letting our customer's protection lapse."

In the case of Pacific Mutual Life Insurance Co. of California v. McDowell, 42 Okl. 300, 141 P. 273, L.R.A.1918E, 391, we held:

"Where a policy insures against accident for a period of one month only, but provides that it may be renewed and kept in force from month to month by the payment of monthly preimums on a certain day of each month, and that it shall be void and of no force and effect if such payments are not made on or before the day mentioned in the policy, such forfeiting provisions, being inserted solely for the benefit of the insurance company, may be waived by the company if it so desires, and such waiver on the part of the insurance company may be inferred from acts, as well as words."

And in the case of Great Southern Life Insurance Co. v. Brooks, 166 Okl. 123, 26 P.2d 430, we said:

"The controlling question is whether or not these letters and this conduct on the part of the insurance company constituted a waiver of the contract provisions requiring prompt payment of the premium to avoid cessation and lapse of the policy on July 26th.

"We regard the law as well settled that such provisions in an insurance policy are for the benefit of the insurer, and may be waived by the insurer. * * * And likewise that such waiver may be shown by a course of action on the part of insured which treats the policy as a valid and subsisting policy which the insurer could have declared forfeited because of a breach or non payment. * * *"

▮▮ Applying the above principles to the facts in the case at bar, we can only conclude that the endorsement relating to the lapse of the policy if the premiums for the second six months were not paid on or before February 27, 1958, being inserted solely for the benefit of the insurance company, was waived by the insurance company and that the trial court's general finding, which is inherent in its judgment, that credit was not extended to the insured and the policy was not in force and effect when the accident happened, is not supported by any competent evidence. We further conclude that credit was extended and that the policy was in force and effect when the accident happened. Having so concluded, it is unnecessary to consider the other proposition.

The cause is therefore reversed with directions to the trial court to vacate the judgment in favor of the insurance company and to enter judgment in favor of Wells for the amount due under the policy less the premium payment due on February 27, 1958.

Reversed and remanded with directions.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JACKSON and BERRY, JJ., concur.

WELCH, JOHNSON and WILLIAMS, JJ., dissent.